| | |
|---|---|
| Your Name: | Christopher Lawrence Bradley |
| Address: | 178 prymid Ct merced CA 95341 |
| Phone Number: | 916 862-8885 |
| Fax Number: | N/A |
| E-mail Address: | |
| Pro Se Plaintiff | |

**FILED**

SEP 0 5 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Christopher lawrence Bradley

        Plaintiff,

vs.

"The arresting officers"

Jifferey W Miller of SAC (PD)

KARI STRAWN deputy District Attorney

ARTURO REYES JR at LAW ATTORNEY

MARYANNE G GILLIARD Judge of dept 12 case

        Defendant.

Case Number  2:17-cv-1834 mCE KJN (PS)

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Yes ☒  No ☐

**PARTIES**

1. Plaintiff. [*Write your name, address, and phone number. Add a page for additional plaintiffs.*]

| | |
|---|---|
| Name: | Christopher lawrence Bradley |
| Address: | 178 prymid ct merced CA 95341 |
| Telephone: | (916) 862-8885 |

COMPLAINT

PAGE **1** OF **1** [*JDC TEMPLATE – Rev. 05/2017*]

2. Defendants. [*Write each defendant's full name, address, and phone number.*]

Defendant 1: (ARRESTING OFFICERS) witness for the people) of the

Name: JIFFERY. W. MILLER (SACRAMENTO POLICE DEPT)

Address: _____

Telephone: _____

Defendant 2: (District ATTORNEY) #235402 (Duputy District ATTORNEY)

Name: JAN. SCULLY, KARI. STRAWN

Address: N/A    901 G St Sacramento CA95814

Telephone: (916) 874-6637

BAR NUM #214473    #131173
Defendant 3: (ATTORNEY at LAW)    (HONORABLE Judge dept 12)

Name: ARTURO. REYES    MARYANNE.G GILLIARD

Address: 2709 PO Box    720 NINTH Street Sacramento CA 95814

Telephone: (916) 747-4285

## JURISDICTION

[*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

3. My case belongs in federal court

☑ under <u>federal question jurisdiction</u> because it is involves a federal law or right. *. US constitution (((violations)))

[*Which federal law or right is involved?*] Civil rights "equal" treatment and amendment 5 amendment 11
descrimination, creul unusual punisment, due process amendment 6 amendment 13 amendment 7 amendment 14

☒ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the amendment
defendants <u>and</u> the <u>amount of damages is more</u> than $75,000. 15

COMPLAINT
PAGE 2 OF 2 [*JDC TEMPLATE – Rev. 05/2017*]

1

## VENUE

2

*[The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.]*

3

4

5

4.     Venue is appropriate in this Court because:

6

☒ a substantial part of the events I am suing about happened in this district.

7

☐ a substantial part of the property I am suing about is located in this district.

8

☒ I am suing the U.S. government, federal agency, or federal official in his or her

9

official capacity <u>and</u> I live in this district.

10

☒ at least one defendant is located in this District and any other defendants are

11

located in California.

12

13

## INTRADISTRICT ASSIGNMENT

14

*[This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.]*

15

16

17

18

5.     Because this lawsuit arose in <u>SACRAMENTO California</u> County, it should be

19

assigned to the <u>UNITED STATES District court NORTHEN District</u> Division of this Court.

20

21

## STATEMENT OF FACTS

22

*[Write a short and simple description of the facts of your case. Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.]*

23

24

July 12th 2006 plantiff/defendant (Christopher Bradley)was

25

getting "assaulted" by (Christine daniels) over arguement (2nd witness)

26

over ex-gf!! while I was trying to stop from being

27

hit in (self-defense) I push "her" off me!! next I was

28

instanTly ATTack by John Christopher Brown who was (Final witness)

COMPLAINT

PAGE <u>3</u> OF <u>3</u> *[JDC TEMPLATE – Rev. 05/2017]*

was intoxicated drunk SELF
July 12 2006   -DeFenze
STAND "mr" ground
                LAW

1  The Sacramento police was called out with
2  911 after [Christopher Brown] Lost the fight hitting
   *(emergency)*  *(final witness)*
3  his head on the ground passing out during mutral
4  combat I (Christopher Bradley) only Acteded in self-
   *(fight)*  *(plaintiff)*
5  defense I had fear for my life and never met or
6  or had prior contact with the victum's on tell
7  this incident at which point the Saramento
8  police where called to the scean I had left
   *(dept)*
9  the scean of crime with my my witness
10 CJ we both went home where I ask him) to use his
   *(due process)*
11 bike to go back in check on the victum
    *(so I)*
12 brown )At the scean of crime at that moment
   *(stranger?)*
13 I was stop by(Sac pd )where I gave
14 them my "I d "and explain who I was I
15 was instantly arrestted for assault while not be giving any
16 due process of self-defense The Sacramento
   *(rights violations)*
17 police with held takeing any photos of proof of
    *(me 4)*
18 me self-defense and also the aggressor (Christine daniels)shirt
    *(was)*  *(2nd witness)*
19 that had my (Christopher Bradley) "blood" over it which self defense
    *(plaintiff)*
20 she admitted too in the court showing obstruction
21 of Justice ,mis carrage Due process violation
22 by Sacramento police August 17 2006
23 (Jiffery W MiLLER )of (Sac Pd) confirmed under
    *(1st witness cop 17)*
24 oath that they had violated the "14"Fourteenth
25 Amendments guarantee of equal rights and
    protections
26 //
27 //
28

COMPLAINT
PAGE 4 OF 4 *[JDC TEMPLATE – Rev. 05/2017]*

**CLAIMS**

**First Claim** equall rights

(*Name the law or right violated:* due process (Cause) obstruction of Justice

(*Name the defendants who violated it:* Jiffery W Miller of sac pd The court dept 12

[*Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

ON July 12 2006 after the (Sacramento) police arrested me they return the bike to my witness (due process) (Sac pd) witness (CJ) but didnt interview (him) violation ~ police mis conduct ~ I was charge with two extra counts of assault on people who didnt hit er touch such as pushing (Christine 2nd witness) off of me in self-defense she accidently fell in to witness (3rd witness von powers) I was giving an extra charge count of assault in battery Entrapment by (Jiffery W MILLER) sacramento police dept on August 17 2006 during prelimz the arresting (Jiffery W MILLER) officer Confirmed my busted lip. makeing (due process) obstruction of justice False arrest / false impresonment / rracial unlawful discrimination ) with (preJudece intentionz) / with holding evidence ) in the court of Law Malious. prosecution with Abuse of process No medical attentions to me violation of civil rights under the 14th Amendment and 5th fifth Amendmernot due process equal justice violations of (All )) the arresting officers

July 12 2006

Creul unsual punisment

SAC PD    Entrapment
August 17 2006

- 6 -

Legal Malpractice

Breach
of verbal
contract plea Void(fraudulent Assistance Claim)  Legal MAL
Practice

1
2  (*Name the law or right violated:* Self-defense / Tampering with witness)
3  (*Name the defendants who violated it:* ARTURO REYES JR ATTORNEY in LAW
4  ACT (1) "ATTORNEY" ARTURO REYES Fraud / Purjury
5  start of prelim - HERRING ARTURO REYES claim
6  He had advice "defendant" Christopher Bradley of
7  his Constitution rights but never have page(3)
8  Line(25) Fraudulent Assistance count(1) page(4) Line(27)
9  Fraudulent Assistance count(2) = Legal (MAL) practice
10
11  ACT (2) "ATTORNEY" ARTURO REYES Due process
12  rights(violation) with holding Evidence page(3) Line(27)
13  Waive reading of the complaint count(3) Fraudulent
14  Assistance of counsle page (4) Line [15-18] legal MAL
15  practice / Fraudulent Assistance of counsle count(4)
16  do you have anything on behave of your client
17  today by way of testimony or witnesses
18  or other evidence? ARTURO Reyes N/O your
19  HONOR = EntRApment / civiL rights violations / due process
20
21  ACT (3) "ATTORNEY" ARTURO REYES TAMPER with witness /stop
22  coach /delay/ influnce / testimony of witness during a
23  proceeding = due dilagence Negilegence / IncRiminated
24  his client whole asking witness Christine Daniels
25  If his client was drunk count (5) Legal Mal practice
26  July 12 I was arrested and giving a blood test in
27  intake which show I wasn't = Due process / Due didigence
28
                                        Fraudulent
                                        Assistance
                                        of counsle

COMPLAINT
PAGE 6 OF 6 *[JDC TEMPLATE – 05/17]*

*[Copy this page and insert it where you need additional space.]*

1

2 Act (4) ATTORNEY[1] ARTURO REYES witholding Evidence

3 count (6) before pre-lims Bradley told Arturo Reyes

4 That he had a "witness" who was at the

5 scean of the crime before court but ARTURO reyes

6 he didnt try to contact "CJ" who was Living

7 next door neibor to Bradley house at the "time"

8 count (7) christine daniels 2nd witness verfy CJ as a witness

9 in court / due process violation count (7) christine daniels

10 admitted in court that chris blood was on her

11 shirt also that Bradley doest hit females maken

12 self-defense purjury to me attackin her" by all any

13 other witness "testimony" VON POWERS purjury

14 christopher Brown purjury Jiffery W MiLLER

15 purjury christopher Bradley self-defense

16 count (8) ARTURO Reyes told client christopher

17 Bradley that the hospital report showed

18 christopher Brown was "drunk" he had

19 with hold mformation from his client before

20 I took plea deal. Christopher (final witness) Brown should

21 have been (barred) from the stand

22 Due process violations / self-defense

23

24 Act (5) ATTORNEY ARTURO REYES Breach of "verbal"

25 Plea deal agreement Christopher Bradley was told

26 if he was take to recieve plea "deal" in order to

27 not go to "trial" ARTURO Reyes told bradley that he

28 would serve only 1 county yr both cases concurrently" 8 months

* 06M06120 → 8 months plea agreement "Void) I served over
11 months in County consecutively before going to
prison for 3yrs I was giving a strike
in 65,000 Thousands doller for self-defense

**CLAIMS**

**First Claim**

(*Name the law or right violated:* Intentional tort / purjury false Imprisonment)

(*Name the defendants who violated it:* Jan Scully   KARI STRAWN)

[*Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

INTENTIONAL TORT is a ~~some~~ category of torts that decribe a civil wrong resulting from an intentional Act of the part of the tortfeasor (alleged wrong doer) KARI STRAWN

Act(1) District Attorney KARI STRAWN: Bearing of false witness (JIFFERY W MILLER) intentional tort due process civil violations where (CJ) christopher Bradley witness Self-defense

Act(2) District ATTORNEY KARI STRAWN: withholding evidence Count(1) ˢCJˢ count(2) christopher Bradley injuries self-defense Count(3) christine danide) bloody shirt with my blood on it (4) medical hospital report showing that (christopher John Brown) was intoxicated July 12 2006 and wasn't/shouldnt)) been allowed to testify where he Imcriminated his self proveing (christopher Bradley) self defense KARI STRAWN FALse Imprisonment Intentional tort obstruction of Justice

//

1  ACT (3) District ATTORNEY KARI STRAWN:
2  intentional tort fail. to act witness Christine daniels
3  testified to tacklin she stated that (Bradley
4  didnt want to hit me because he know
5  Im a girl page (21) Line 15 - 28 ] self-defence
6     Bradley KARI STRAWN intentional tort
7  VON H PowERS purjury / christopher John Brown
8  purjury JiFFery W MiLLER purjury
9  ~~tot~~

10
11     Act (4) District ATTORNEY KARI STRAWN:
12  false Imprisonment self-defense ct 3 ct 2
13  page (40) Line 11 - 19 ] ct 1 self-defense christopher
14  Bradley kARI STRAWN intentional tort

15
16     Act (5) DisTrict ATTORney KARI STRAWN:
17  page (30) Line 20 - 26 ] VON "powers was geussing ??
18  he said phone or something" pg 30 Line (25) he followed
19  up with he didnt see that he had his phone
20  Because there wasn't one being used during
21     this moment Christine daniles purjury
22  christopher John brown purJury KARI STRAWN intentional tort
23  christine daniles had no inJuryies of fabricated state ment
24  Entrapment I christopher Bradley wasn't
25  even the aggressor! christine daniels was (ex-gf) own argument
26  //
27  //
28

- 8 -

[Copy this page and insert it where you need additional space.]

1

2  Name the Law Violated: MALIOUS PROSECUTION ABUSE of process

3  Name defendants who violated it: dept 12 Judge MARYANNE G GILLIARD

4  ACT(1) Malicious Prosecution self-defense common Law intentional tort of

5  abuse of process it elements include intentionally and

6  maliciously instituting and pursueing a legal

7  action brought with out probable cause act(1) Christopher plaintiff

8  Bradley(defendant) self-defense stand your ground law know

9  retreat No surrender 2nd ((witness in court)) Christine daniels testified that

10  Christopher Bradley page(21) LINE(15) it was tackling like

11  he didn't want to hit me because he know Im

12  a girL you know. Christopher Bradley self-defense

13  page(21)Line(19)-(27) (Intentional tort) MARYANNE G GILLIARD proscutorial

14  misconduct is an illegal act or failing to act on

15  the part of proscutor (intentional tort KARI STRAWN) an attempt

16  to sway Judge to wrongly convict defendant or

17  to Impose a harsher than appropriate punsiment (self defense)

18  _____

19  Act(2) Malicious prosecution self-defense Judge MARYANNE G (obstruction of justice)

20  GilIARD subornation /purJury)intentional act

21  of swearing a false oath. act(2) John Christopher by (final witness)

22  Brown testified that he had pick up VON H POWERS (3rd witness)

23  page(39) Line(18)"purJury"" I pick VON up got him to

24  his feet Line 19-28. purJury MARYANNE G GilARD (miscarriage of justice)

25  VON H POWERS (3rd witness) testified early that he was on the

26  bushes tryin to get up still. page(32) Line 13-19) self-defense

27  page 33 Line 5-20 purJury by John Christopher Brown purJury (final witness)

28  page 37 Line 16 23) wasn't a phone Christopher Bradley plaintiff self-defense

John Christopher Brown _ purJury page(36) Line 10-11 didn't hit females

COMPLAINT

PAGE 10 OF 10 [JDC TEMPLATE – 05/17]

*[Copy this page and insert it where you need additional space.]*

1

2    Act 3 Malicious Prosecution John Christopher Brown
self-defense                    (final witness))

3    page 40 Line 5-9 "(purjury)" Christopher Bradley self-defense

4    Line 10-20 page 40 self-defense No Retreat No

5    surrender stand your ground Law False arrest

6    Imprisonment convictions Judge MARYANNE

7    G GIARD: malicious prosecution / ABUSE of

8    process    self-defense

9

10    Commission on Judicial performance

11    complaint August 22, 2017 status pending

12

13    STATE BAR of CALIFORNIA #17-14516

14    Attorney complaint August 24, 2017 status

15                                              pending

16    court of Appeal of state california

17    #C084240   notice of receipt but not (filed)

18                                        MAY 9, 2017

19

20    . Administrateve process (stalled)

21    Tolled (SOL) ASAP and began

22    process of (discovery) motion

23    please and thankyou.

24

25                              Christopher Bradley

26

27

28

COMPLAINT
PAGE 10 OF 10 *[JDC TEMPLATE – 05/17]*

*[Copy this page and insert it where you need additional space.]*

___. STATUTORY Exceptions sections 351 through 356 califorinia code of civil procedure set forth circumstances that toll (suspend delay, Extend) increase and or Lenghten that Limitations (statue) period

still ONgoing disability

mental disablity / incompetence: CCP section 352 (a)
Because of the tortuous wrong doing the statue of Limitations is suspended tolled clock stops for as long as mental incompetence continuez

still N effect

Restitution ORDER: CCP section 352.5 if a tortfeasor comes under an order of Restitution with repect to a specific act giving rise to his liability than the statue of limitations time period is tolled (suspended) put on hold during the time the order is in effect

right to investigate tortouse wrong doing by the City of sacramento califoraia
   felony conviction CCP§340.3(a)
Delay-discovery rule 2017 CONjuryies of harm 2 wrongdoing
                                                          Entrapment

**DEMAND FOR RELIEF**

[*State what you want the Court to do. Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.*]

over turn all felony 'conviction's' acquittal of all charges dismiss self-defense "innocents" revoke revenue recovery Order #BWNHSHK #A0DO01158GK84# Due Now $55,007.39 revoke not award christopher Bradley $30 million dollers (Justice and liberty) 10million each year in Jail at $30 million dollers settlement for punitive damages emotion distress, false Imprisonment creul unusual punishment, Entrapment, mis carriage of Justice / malious prosecution civil rights violations if or when?? a Jury trial appointed?? I Would Like to increase amount from $30 million to $65 million settlement doesn't apply thank you

**DEMAND FOR JURY TRIAL**

[*Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.*]

☒ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 9 / 1 / 2017    Sign Name: *Christopher Bradley*

Print Name: *Christopher Bradley*

COMPLAINT

PAGE 3 OF 13 *[JDC TEMPLATE – 05/17]*

CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

*Evidence*
*Reporter Transcript.*
*Chambers Copy*

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF SACRAMENTO   )

I, CATHERINE (CASEY) R. VESTITO, do hereby certify
that I am a Certified Shorthand Reporter, and that at the
times and places shown I recorded verbatim in shorthand
writing all the proceedings in the following described
action completely and correctly to the best of my ability:

COURT:    Sacramento Superior Court
          Department 12

JUDGE:    Honorable MARYANNE G. GILLIARD

CASE:     PEOPLE vs CHRISTOPHER LAWRENCE BRADLEY

NUMBER:   06F05998

DATE:     THURSDAY, AUGUST 17, 2006

I further certify that my said shorthand notes have
been transcribed into typewriting, and that the foregoing
pages
                    1 through 44,

Constitute an accurate and complete transcript of all my
shorthand writing for the dates and matter specified.

I further certify that I have complied with CCP
237(a)(2) in that all personal juror identifying
information has been redacted if applicable.

Executed on this 18th day of August 2006 at
Sacramento, California.

**ORIGINAL**

CATHERINE (CASEY) R. VESTITO,
CSR# 9670,RPR,CRR

1               C H R O N O L O G I C A L   I N D E X

2          PEOPLE vs CHRISTOPHER LAWRENCE BRADLEY

3

4

5                                                            PAGE

6

7

8    THURSDAY, AUGUST 17, 2006

9
     PROCEEDINGS                                              3
10

11   Witnesses for the People:

12   JEFFREY W. MILLER

13   DIRECT EXAMINATION BY MS. STRAWN                         4
     CROSS-EXAMINATION BY MR. REYES                           7
14

15   CHRISTINE DANIEL

16   DIRECT EXAMINATION BY MS. STRAWN                         12
     CROSS-EXAMINATION BY MR. REYES                           18
17

18   VON H. POWERS

19   DIRECT EXAMINATION BY MS. STRAWN                         28
     CROSS-EXAMINATION BY MR. REYES                           31
20

21   JOHN CHRISTOPHER BROWN

22   DIRECT EXAMINATION BY MS. STRAWN                         34
     CROSS-EXAMINATION BY MR. REYES                           39
23

24   DEFENDANT HELD TO ANSWER                                 42

25   CERTIFICATE OF COURT REPORTER                            45

26

27

28

1          IN THE SUPERIOR COURT OF CALIFORNIA

2         COUNTY OF SACRAMENTO, STATE OF CALIFORNIA

3      HONORABLE MARYANNE G. GILLIARD, JUDGE, DEPARTMENT 12

4                      ---oOo---

5

6    THE PEOPLE OF THE STATE OF CALIFORNIA, )      ORIGINAL
                                           )
7                         Plaintiff,       )
                                           )
8              vs.                         )     Case Number
                                           )      06F05998
9    CHRISTOPHER LAWRENCE BRADLEY,         )
                                Defendant. )     FILED
10   _____  )
                                              AUG 21 2006
11
                   REPORTER'S TRANSCRIPT OF
12                                            By _____ Deputy Clerk
                   PRELIMINARY HEARING
13
                THURSDAY, AUGUST 17, 2006
14

15                      APPEARANCES

16
     For the People:
17

18              JAN SCULLY, District Attorney for the
                County of Sacramento, State of California
19              By: KARI STRAWN
                Deputy District Attorney
20

21
     For Defendant CHRISTOPHER LAWRENCE BRADLEY:
22

23              ARTURO REYES
                Attorney at Law
24

25

26

27   Reported by:   Casey R. Vestito, CSR 9670

28

1                    · THURSDAY, AUGUST 17, 2006

2                         AFTERNOON SESSION

3                            ---oOo---

4        The matter of The People of the State of California,

5    Plaintiff, versus CHRISTOPHER LAWRENCE BRADLEY, Defendant,

6    Case Number 06F05998, came on regularly this day before

7    Honorable MARYANNE G. GILLIARD, Judge of the Superior Court

8    of California, County of Sacramento, sitting in Department

9    12.

10       The People were represented by KARI STRAWN, Deputy

11   District Attorney.

12       The Defendant CHRISTOPHER LAWRENCE BRADLEY was

13   represented by ARTURO REYES, Attorney at Law.

14       The following proceedings were then had:

15       THE COURT:  Calling the matter of the People of the

16   State of California versus Christopher Lawrence Bradley.

17       Is that your true name, sir?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Counsel please state your appearance.

20       MR. REYES:    Arturo Reyes for Mr. Bradley, Your

21   Honor.

22       MS. STRAWN:    Kari Strawn on behalf of the People.

23       THE COURT:  Mr. Reyes, has your client been advised     misrepresent

24   of his constitutional rights? (Act1) No!!                   fraudulent

25       MR. REYES:  Yes.   perjury/inneffective assistance of counsle

26       THE COURT:  Does he waive reading of the complaint?

27       MR. REYES:   Yes. due process violations ((Act2))

28       THE COURT:  Are the parties ready to proceed?            with holding evidence
                                                                  obstructions

                 didnt subpoena wittness   cj Bradley next door,
                 neibor for court in myself defense claim before
                                                    3 court

act 3

1      MS. STRAWN:  Yes.  Intentional tort / Entrapment

2      MR. REYES:  Yes.  Illegal mal practice/fraudulent assistance

3      THE COURT:  People call your first witness.

4      MS. STRAWN:   People call Officer Miller.

5      THE CLERK:  Please step right up here, sir.  That's

6   good right there.  Raise your right hand.

7          Do you solemnly swear the testimony you'll give in

8   this cause will be the truth, the whole truth, and nothing

9   but the truth so help you God?

10         THE WITNESS:  I do.

11                       TESTIMONY OF

12  JEFFREY W. MILLER, witness called by the People:

13         THE CLERK:  Thank you.  Have a seat in the witness

14  chair.  And please state your name and spell it for me.

15         THE WITNESS:  Jeffrey W. Miller.  J-E-F-F-R-E-Y.

16  Miller, M-I-L-L-E-R.

17         THE CLERK:  Thank you.

18         THE COURT:  Please proceed.

19                    DIRECT EXAMINATION

20  BY MS. STRAWN, Deputy District Attorney:

21  Q      Officer Miller, where do you work?   due process violation
                                               obstruction of Justice
22  A      Sacramento Police Department.   Act 4 civil rights violations

23  Q      How long have you been a sworn peace officer? Entrapment

24  A      A little over four years.   false Imprisonment
                                     unlawful discrimination
25  Q      While you were at the academy, did you take a class   by
                                                            Sacramento PD
26  teaching you how to conduct criminal investigations,

27  collect evidence, and testify at Proposition 115

28  preliminary hearings?   unlawful racial discrimanation, Entrapment

*(handwritten: self-defense 5 of attention)*

1    A    Yes.

*(handwritten: (unlawful discrimination))*
*(handwritten: (failed to give medical))*

2    Q    Did you pass that class?

*(handwritten: (civil rights violation) due process)*

3    A    Yes, I did.    *(handwritten: Act 5 Entrapment / false imprisonment /)*

4    Q    Were you on duty on July 12th, 2006, at about

5    10:18 p.m.?

6    A    Yes, I was.

7    Q    Did you get called to an assault call that occurred

8    at 2617 Edinger Way?

*(handwritten: arresting)*

9    A    Yes, I did.  *(handwritten: Act 6 civil rights violations base on the officer has only 1 yrs experance)*

10    Q    Is that location in the County of Sacramento? *(handwritten: collecting evidence)*

11    A    Yes.

12    Q    Did you contact someone by the name of Inosi

13    Batibasaga?

14    A    Yes.

15    Q    Who was that person?

*(handwritten: falsefied)*

16    A    He was a witness. *(handwritten: Act 7 obstruction of Justice, witness)*

17    Q    To the assault? *(handwritten: The was inside of his house eating food)*

*(handwritten: 30/50 ft away at night time (10:00pm) (dark out side))*

18    A    Yes. *(handwritten: Inot consistant statement (unlawful discrimunttaion))*

19    Q    What did Mr. Batibasaga tell you occurred?

20    A    Um, he had explained to me that he was -- I believe

21    it was a friend's house he was at, 2617 Edinger.  He was in

22    the house.  He was sitting by the window.  He was eating.

23    And he observed a female black adult running eastbound on

*(handwritten: Act 8)*

24    Edinger being chased by a black male adult running *(handwritten: purjury Inconsistat)*

25    eastbound Edinger behind her. *(handwritten: the female christine daniels was (walking))*

*(handwritten: also I never hit her she claim I tackled)*

26        He stated he felt something was wrong.  He walked *(handwritten: her in)*

*(handwritten: self-defense)*

27    outside to look.  He could see both of those subjects were *(handwritten: pursuy)*

28    just to the east of his house.  He saw the male punching *(handwritten: act 9)*

*(handwritten: perjury) the female witness also*
*(handwritten: said bradley doesn't hit females)*
*(handwritten: but could explain in details what)*
*(handwritten: happen / due process violations 5)*
*(handwritten: Entrapment false imprisment)*

1    the female, and he saw an elderly male neighbor come out

2    and try to assist the female, and the male black adult that

3    was -- that he observed punching the female started

4    attacking the elderly male. (Act 10) perjury inconsistancy

5    Q        What did he say happened next?    (Act 11) Brown hit his

6    A        He said that the male black adult pushed the elderly head on

7    male onto the ground and then began kicking him.  And he the ground
                                                              only self-defense

8    said he went to go help to -- Witness Batibasaga stated he bradley

9    was gonna go help, too.  Then he saw the suspect turn and perjury
                                                                  no kicks

10   leave eastbound Edinger and then disappear out of sight

11   northbound on 27th Street.

12   Q        Was the suspect detained that evening?

13   A        Yes.

14   Q        Did you transfer or transport Mr. Batibasaga to do a

15   field showup?    (perjury) Act 12    was inside his house at night)

16   A        Yes, I did.    Mr Batibasaga didnt see the fight
                                                                Tell in after
                                                                it was over

17   Q        Was Mr. Batibasaga given a field showup admonition? I was gone
                                                                    already

18   A        Yes, he was.

19   Q        What is that admonition?    Act 13 self-defense/false imprisonment

20   A        Admonition is -- what I tell him is the person or false arrest

21   people you're about to see may or may not be guilty of any due process
                                                                  violations

22   crime.  Just because they're in the presence of police, in Entrapment
                                                                  demed wasn't given

23   the back of a police car or handcuffed, does not make them medical

24   guilty of any crime.  What I need you to do is look at the attention
                                                                 to of injury

25   person we show you.  Tell me if they were involved in the Entrapment

26   situation you observed.    of self-defense

27   Q        Did Mr. Batibasaga indicate that he understood what

28   he was supposed to do?

1    A    Yes, he did.

2    Q    Did he make an identification?

3    A    Yes, he did.

4    Q    And who did he identify?

5    A    He identified suspect over here seated in the orange

6    suit, Mr. Christopher -- look at his last name -- Bradley.

7         MS. STRAWN:    Your Honor, could the record reflect

8    the witness has identified the Defendant?

9         THE COURT:    Do you see him in the courtroom?

10        THE WITNESS:    Yes, I do.

11        THE COURT:    Where is he at?

12        THE WITNESS:    Right here in the orange jump suit.

13        THE COURT:    Yes.

14        MS. STRAWN:    Thank you.    I have nothing further for

15   this witness.

16        THE COURT:    Okay.    Mr. Reyes?

17        MR. REYES:    Yes.

18                      CROSS-EXAMINATION

19   BY MR. REYES, Counsel for the Defense:

20   Q    Officer Miller, when you spoke to Mr. Batibasaga,

21   did he state how many individuals were out there at that

22   time?

23   A    Just from the statement he gave to me there was the

24   female, the male, Mr. Bradley, and the elderly male.

25   Q    And the elderly man?

26   A    Elderly man.

27   Q    So there was only one elderly man.    There was nobody

28   else there?

*Handwritten annotations in margins:*

self-defense
Entrapment  false Imprisonment
Act 14  he wasnt there during
the fight and he was
around after (witness tampering )
by police

Act 15 intentional tort
obstruction of Justice
racial discrimination
inconsistancy
miscarriage of Justice

Act 16 Mr Batibasaga didnt see
<J my friend who was right next to
suspect this Bradley the whole time (Inconsistant
perjury
by wittness

Mr Batibasaga plus COP Entrapment
police officer

OBSTRUCTION 7
of Justice

8

*Act Entrapment*
*purjury inconsistantcy*
*the witness didnt see the fight*

1    A    That's what he told me, yes.

2    Q    He didn't see any other male black adult in the

3    area?                                          *Entrapment*
                                        *Act 1*
4    A    He didn't mention one. *Inconsistantcy nt reliable*
                            *CJ was next to Bradley as my witness*

5    Q    Okay.  How far away was he -- did he mention to you

6    how far away he was?

7    A    He pointed out to where it was.  It appeared to me

8    that from the front of the house that he was in to where he

9    was explaining where this took place, anywhere between 30

10   to 50 feet away. *Act 18   unreilable   wittness Entrapment*
                                    *Tampering*
11   Q    30 to 50 feet?  Did you measure the area?

12   A    No, I didn't.  It's just an approximate.  Just kind

13   of guessing.            *Mis carrage of Justice*

14   Q    How was the lighting?            *Act 19 not reliable*
                                                          *witness*
15   A    It was dark that night.  There was porch lights on.

16   I'm not sure if there was street lights or not.   — *Entrapment*

17   Q    And how soon after the event did Mr. Batibasaga

18   perform the field showup?

19   A    I arrived on scene, and I believe -- may I refer to

20   my observation report?

21   Q    If it would refresh your recollection.

22   A    Yes, please.  I arrived on scene at 2155 hours.  And

23   there were two other officers already on scene that had --

24   I was the third one.  I got there a little later.  They had

25   already obtained the suspect description, and that he was

26   named. *Act 20   Civil right violations of due   process equal Justice*
                            *unlawful discrimination of self defense*
27        Um, as soon as I got there, I and Officer Davis

28   proceeded eastbound and kind of split up in our cars to *no medical attention for my injury*

1   look for the suspect, Suspect Bradley.  And then I heard

2   Officer Davis come on the radio and say I have a

3   possible -- possible suspect matching that description over

4   here.

5       I came around behind him.  He had already lit up   *due process The violation*

6   Mr. Bradley.  I came up behind him.  Mr. Bradley was on a   *bicycle belong*

7   bicycle.  We came up, contacted him, I.D.'d him, asked him   *to CJ my witness*

8   who he was.  He told us his name.  He was detained in

9   handcuffs, placed in the back of Officer Davis' patrol   *obstruction of*

10   vehicle.  Right after that -- *police tampering with "evidence" I was*   *obstruction of Justice*

11   Q   Let's stop there.   *left in the car (bleeding) with no*

12   A   Okay.   *medical attention to prove self ny defense or wasn't allowed to speak on my defense*

13   Q   How far away from the -- from 2617 Edinger was   *in court - malicious prosecution of interview (G) my witness*

14   Mr. Bradley when he was located?

15   A   He was on 27th street, which, I believe, was one --

16   yeah, not even a whole block, but the next -- the next

17   intersection, and he was just north of Edinger, and he was

18   actually heading southbound when he was stopped back

19   towards Edinger.

20   Q   Okay.  Were there any other male adults with

21   Mr. Bradley when he was located?   *The bicycle*

22   A   No.   *didnt Interview CJ (Due process violations the belong to mis carriage of (Justice) (CJ) witness*

23   Q   He was by himself?

24   A   Yes.

25   Q   Did Mr. Batibasaga identify or point out to you who

26   the elderly gentleman was that he said was being hurt?

27   A   No, he didn't.   *obstruction of Justice of sacramento pd un reliable (witness) tampering in court*

28   Q   Was the elderly gentleman present at the time that

1   you interviewed Mr. Batibasaga?

2   A    I believe Fire had already taken him away in the

3   ambulance.

4   Q    And when you were conducting this interview, were

5   there any other people around the area of 2617 Edinger?   *unlawful discrimination*

6   A    There was the female victim, and there was another   *due process violations*

7   neighbor.  I don't know what the involvement there was.   *witness tampering*

8   There was -- but there was a couple people.  Um, I actually   *perjury*

9   pulled a witness Batibasaga away over to where my car was,   *obstruction of justice*

10  and we spoke.   *civil rights violations*

11  Q    Okay.  Did you see -- so you did not observe the

12  injuries to the victim?   *((due process violations)) false imprisonment*

13  A    No, sir.   *(( obstruction of justice )) illegal sentence*
    *(( mis carriage of justice ))*

14  Q    Did you transport Mr. Bradley back to the scene for

15  the field showup?   *due process violation*

16  A    No, sir.  I took Witness Batibasaga over to 27th

17  Street just north of Edinger, where he was -- where he was

18  seated in the back of Officer Davis' patrol vehicle.   *false imprisonment*

19  Q    Okay.  Did you have an opportunity to observe   *unlawful discrimination*

20  Mr. Bradley on that evening?  Did you see him yourself,

21  personally?

22  A    Yes, when we detained him.   *unlawful discrimination*  *civil rights violations (false imprison met)*

23  Q    Okay.  Did he have any cuts, or was he bleeding in   *Entrapment  due process*

24  any way?   *fraudulent assisstance of counsel  legal malpractice (Entrapment)  obstruction violation*

25  A    I believe -- I believe he had an injury.  It was a   *of justice*

26  small injury.  I don't remember where it was though.   *civil rights violations*

27  Q    Did he have an injury to his lip?   *intentional tort*

28  A    That possibly is where it was, yeah.   *prosecutorial misconduct*

*Tampering with evidence*

*10 by saf pd*

1    Q    How about his elbow? Did he have injury to his

2    elbow?

3    A    I don't remember.

4    MR. REYES: I have nothing further, Your Honor.

5    THE COURT: Okay. Ms. Strawn?

6    MS. STRAWN: Nothing further.

7    THE COURT: Thank you, Officer.

8    THE WITNESS: Okay.

9    THE COURT: Ms. Strawn?

10    MS. STRAWN: People call Christine Daniel.

11    THE CLERK: Please step right up here, ma'am. Just

12    right in the middle there. That's good. And raise your

13    right hand.

14    Do you solemnly swear the testimony you'll give in

15    this cause will be the truth, the whole truth, and nothing

16    but the truth so help you God?

17    THE WITNESS: Yes.

18                    TESTIMONY OF

19    CHRISTINE DANIEL, witness called by the People:

20    THE CLERK: Thank you. Have a seat in the witness

21    chair right there, and please state your name and spell it

22    for me.

23    THE WITNESS: Christine Daniel. C-H-R-I-S-T-I-N-E.

24    D-A-N-I-E-L.

25    THE CLERK: Thank you.

26    THE COURT: There's no "S" on the end of your name,

27    ma'am?

28    THE WITNESS: No.

```
1              THE COURT:  Please proceed.

2                       DIRECT EXAMINATION

3    BY MS. STRAWN:

4    Q      Ms. Daniel, I want to direct your attention to

5    July 12th, 2006, at a little after 10:00 o'clock.  Do you

6    remember where you were on that evening?

7    A      Yes, I do.

8    Q      Where were you at?

9    A      I was at a park, at Woodbine Park.

10   Q      Where is that located?

11   A      Um, I'm not sure what the address.  I think it's on

12   47th or 50th.  I'm not sure.

13   Q      Is it by 27th Avenue and Edinger Avenue?

14   A      Um, I think so.  I know it's on Florin and 24th.

15   Q      What time did you leave the park?

16   A      Um, I'll say around 8:00 or 7:00 or 8:00 is -- I argue

17   really don't know 'cause I didn't have the time.

18   Q      Was it dark out?

19   A      Yes, it was.

20   Q      Okay.  So it was later -- given the summer hours,

21   it's probably a little bit later?

22   A      Yes.

23   Q      Who did you leave the park with?

24   A      With Christopher Bradley and his friend.

25   Q      Could you point to who you're referring to as

26   Christopher Bradley?

27   A      "Christopher Bradley."  (Indicating.)

28              MS. STRAWN:  Your Honor, could the record reflect
```

Handwritten annotations:

- (line 7) < due process violations > she doesn't live and the area and was giving a ride to 47ard early to spend a nite but one needed ride no one needed not to call the police that happen after the fight bradley self-defense
- (line 12) she does not living in the neibor-hood during this time < due process violations >
- (line 13) < due process violations >
- (line 14) < due process > no rea violation
- (line 16) to call cops we attack bradley only self-defense
- (line 18) ( due process violation ) Bradley was never mad about a phone. She didn't ask for the phone not tell after fight bradley was only self-defense
- (line 23) Civil rights violations obstruction of justice due process violation My witness whos bicycle I was riding police mig conduct unlawful discriminato

1    that the witness has identified the Defendant?

2        THE COURT:  Yes.

3    Q    BY MS. STRAWN:  At some point when you were on

4    Edinger Avenue, what happened?

5    A    Um, we had got into an argument, and there was

6    fighting going on between me and him.  I guess he got mad

7    about a situation that was going on about his

8    ex-girlfriend.  And he was saying that, you know, I

9    basically say that I liked him, and I told him I didn't.

10   So I guess he got mad about it.

11       And then, also, I think it made it worse only

12   because he was drinking, too.  Him and his friend was at

13   the park drinking.

14   Q    What happened as you walked -- at some point did you

15   run into two men that were strangers to you?

16   A    Yes.  When I was walking, basically trying to avoid

17   the fight to stop him from tackling me and fighting, um, I

18   came upon an elderly guy that was coming from his house.

19   Q    Now, let's back up before that.

20   A    Okay.

21   Q    Just before that, when you and Mr. Bradley were

22   fighting, did anything get physical?

23   A    Um, before we were --

24   Q    Before you got to the point where you ran into the

25   elderly --

26   A    Oh, yes.  There was already fighting.  The whole

27   time that I was walking from the park, I was being tackled

28   and we were just fighting, basically, the whole time we was

*Handwritten annotations in margins:* perjury; I wasn't mad. She was The aggressor over ex gf; perjury; due process violations / she was gonna spend a nite at house before; argue ment; we all (walking) not running; wittness tamper; obstruction of Justice; police misconduct; we were argueing loud when Bradley started to perjury; attack me I don't hit females so I push her off of me which started the fight with brown self defense; due process violations existed (with holding evidance) in court obstruction of Justice; witness 6x; perjury; police misconduct to hurt intentional tort; false imprisonment cruel unsual punisment

1    coming from the park.

2    Q    At any point did you try and get away from

3    Mr. Bradley?

4    A    Yes, yes.

5    Q    Who started the physical fighting?

6    A    The physical fighting?    *self-defense bradley*
                                     *due process violations*

7    Q    Mm-hm.                                    *with holding evidence*
                                                    *perjury*

8    A    It was -- well, he basically -- we were at the park.  *Bradley*

9    It started at the park.  We were fighting at the park.  And *doeston hit female*

10   he, basically, got mad and got into, you know, my face and,   *she was*

11   you know, you didn't tell me that you liked me and all, and   *the*

12   I was like, Chris, back away.  And he tackled me like  *aggresser over*

13   football tackle or something.  I don't know.  But --  *ex-gf I was trying to*

14   Q    Then what did you do next?   *stop her from hit me perjury*

15   A    I had got up and defended myself, and we fought  *perjury*

16   like, I think, two or three times at the park.  And then I  *she lives*

17   had gave up, and I just started walking.  I was like, okay,  *far away woodbine*

18   I'm just gonna go home, just started walking.  So the whole  *it was dark outside we was all*

19   time I was walking I was being tackled.  And that was  *living the park*

20   happening the whole time when I had got to the elderly guy,  *night time*

21   the senior citizen.                                    *due process violation*

22   Q    Okay.  Now, when you were trying to get away from

23   the situation, did you run or were you walking away or --   *witness*

24   A    I was walking away.  *falseified statement by police by witness*  *obstruction of justice* *perjury she*

25        THE COURT:  Counsel, is this a witness potentially?  *was the aggression*

26        MR. REYES:  No.  It's Mr. Bradley's father.  *we was argueing only at first*

27        THE COURT:  Okay.  *I had to defend my*

28   Q    BY MS. STRAWN:  Now, right where you got to the  *self from her*

```
1   place where you met up with the senior citizen, what
2   happened?
3   A      I was yelling to use somebody's cell phone, and to
4   tell -- I was telling him, you know, this wasn't my blood
5   on his -- on my -- this wasn't my blood on my shirt. This
6   is his blood.  Can I use somebody's phone to call the
7   police?
8          And we were on the same sidewalk, and he had tackled
9   me, um, against, you know, the senior citizen, and we all
10  fell in the bushes.  And we had got up, and there was
11  another guy that I -- I think is his friend.  He came down
12  from the house, and he say, you know, what is going on?
13  And I asked him -- when I had got up, I asked him can I use
14  the phone, and --
15  Q      Why did you want to use the phone?
16  A      To call the police.
17  Q      Why did you want to call the police?
18  A      He was constantly like tackling me.  He wouldn't
19  stop.
20  Q      Then what happened?
21  A      Um, he was going to let me use his phone, and Chris
22  had got mad and slapped the phone or hit the phone out of
23  his hand.  And the guy he was gonna fight was gonna, you
24  know, just basically defending his self.  And they --
25  Q      Okay.
26         MR. REYES:   Excuse me.  Objection, Your Honor.  It
27  calls for speculation.
28         THE COURT:  Sustained.
```

Handwritten annotations (margins):
- violations
- she didn't ask for phone → purjury / obstruction of justice & due process / civil rights violations / withholding evidence
- self-defense
- false Imprisonment
- Intentional tort / mis carriage of Justice
- the fight started / I had push her off me not tackle. That's when I got hit in the face by brown 4 no reason at all Self defense
- purjury she had no injurys only I did Bradley
- (purJury) (due process violation) illegal sentence) / She had no injurys false imprisonment false arrest
- purjury / He didn't have a phone he just started to attack me / me was drunk / Bradley self-defense / ineffective assitanse of counsel

*(handwritten: )) Tape 6(pm)*
*(handwritten: witness)*
*(handwritten: intentional tort)*

1    Q    BY MS. STRAWN:    Let's back up a little bit.  When

2    you first got to the elderly man, what specifically

3    happened when you first got to that point?

*(handwritten: intentional tort.)*

4    A    When I was walking towards the elderly man, I asked

5    him can I use the phone, you know, to call the police.  *(handwritten: perjury)*

6    And, like I said, to tell them that, you know, it wasn't  *(handwritten: obstruction of justice)*

7    blood.  I was just basically trying to use his phone.  *(handwritten: due process violation)*

8    Q    Okay.    *(handwritten: self defense   false imprisonment   civil rights)*
*(handwritten: Bradley   illegal sentence   violations  police)*

9    A    And --    *(handwritten: false arrest  malicious  misconduct)*
*(handwritten: prosecution)*

10    Q    Was that your blood on your shirt?

11    A    No.  That was his blood.  *(handwritten: Obstruction of Justice)*

12    Q    Okay.  From Mr. Bradley?

13    A    Yes.

14    Q    Okay.  How did he injure himself?  *(handwritten: she kept attacking me  Bradley  I push him off @ park)*

15    A    From my hands from fighting him.  *(handwritten: Self-defense Bradley)*

16    Q    Okay.  *(handwritten: Intentional tort)  (handwritten: cruel unsual (punisment))*

17    A    And he just -- we, you know, we fell in the bushes.

18    Everybody had got up.  And then the -- I asked the guy can  *(handwritten: (perjury))*

19    I use his phone, the guy that came from the house.  And he  *(handwritten: Theres)*

20    was gonna let me use his phone, but Chris got mad when he  *(handwritten: wasnt a phone)*

21    was going to hand me the phone, and he slapped it or socked

22    it -- one of them -- out of his hand.  I don't know what he

23    did, but he hit it out of his hand.  *(handwritten: (due process violation))*
*(handwritten: white she was get up)*

24    And the guy came back at Chris, you know, tried to  *(handwritten: after being push off Bradley)*

25    fight him, tried to fight him back, basically, defending  *(handwritten: back)*

26    himself, and they start fighting --  *(handwritten: chris Bradley was attack)*
*(handwritten: for no reson)*

27    MR. REYES:    Objection, Your Honor.  *(handwritten: atacted self- defense)*

28    THE COURT:    As to the latter part sustained.  *(handwritten: in stand your ground)*

*(handwritten: wrongful/illegal conviction/sentence)*    *(handwritten: by drunk man)*    *(handwritten: Obstruction of Justice)*

*[handwritten: witness tampering]*

1    Q      BY MS. STRAWN:   Okay.  Without saying why you

2    thought that the man with the phone was fighting back, just

3    tell us what happened next.                         *[handwritten: start of fight]*

4    A      Okay.  Um, he -- just they started fighting.  And *[handwritten: (perjury]*

5    the neighbors started coming outside.  I walked, um, over  *[handwritten: there]*

6    to the -- to the -- to the right side of my, um, to the --  *[handwritten: wasn't ever a phone]*

7    to the street on the sidewalk, and there was a, um, younger  *[handwritten: she got somebody]*

8    guy there.  I think he was like, I think, Hawaiian or I'm  *[handwritten: else's]*

9    not sure.  But he was gonna -- she was gonna let me use her

10   phone.  He was gonna let me use his.  And they were already

11   in the street fighting, but I didn't see what was going on

12   because she told me to go inside her house.

13   Q      Did you leave the area to go inside the house?  *[handwritten: due process]*

14   A      Yes.  I went inside the house, left the area.  And  *[handwritten: violations obstruction]*

15   I'll say about ten minutes later when I came back outside,  *[handwritten: of Justice]*

16   um, the guy was coming up off the ground because I guess he  *[handwritten: witness Tampering]*

17   was knocked out or he --                              *[handwritten: self defense]*

18          MR. REYES:   Objection, Your Honor.

19          THE COURT:   Sustained.                 *[handwritten: witness Tampering]*

                                                      *[handwritten: obstruction of Justice]*
20   Q      BY MS. STRAWN:   Without telling us what other  *[handwritten: intentional]*

21   people told you or what you guess happened, at any point  *[handwritten: tort]*

22   after, what did you do when you went into the house?  *[handwritten: cruel unusual punishment]*

                                                      *[handwritten: false imprisonment]*
23   A      I called the police.                     *[handwritten: illegal sentence]*

                                                      *[handwritten: wrongful conviction]*
24          MS. STRAWN:   Okay.  Nothing further.    *[handwritten: self-defense]*

25          THE COURT:   Mr. Reyes?

26          MR. REYES:   Thank you, Your Honor.

27   ///

28   ///

<pre>
1                      CROSS-EXAMINATION

2    BY MR. REYES:

3    Q      So, Ms. Daniel, what time did you arrive to the park

4    -- the Woodbine Park?

5    A      It was later in -- it was -- I don't know.  We left

6    -- we arrived I say about maybe 1:00 or 2:00 in the

7    afternoon.  I don't really know.

8    Q      Okay.  Who did you go to the park with?

9    A      With Chris and his friend.

10   Q      And what is Chris' friend's name?

11   A      Um, C.J.

12   Q      And how long have you known Chris and his friend?

13          Well, first, how long have you known Chris?

14   A      I known Chris since 7th grade.  We went to middle

15   school together.

16   Q      How long ago was that?

17   A      Some years back.

18   Q      How old are you now?

19   A      I'm 20.

20   Q      20?  Okay.  And when you arrived to the park, just

21   the three of you arrived together?

22   A      Yes.  We were the only ones there.

23   Q      You were the only ones there?

24   A      Mm-hm.

25   Q      The entire time you were in the park you were the

26   only ones there?

27   A      Well, some of his friends showed up.  Everybody

28   showed up in the park talking, whatever.  But when
</pre>

*Handwritten annotations in margin:*

"due process violation"

witness CJ The
(police    bicycle
misconduct)    owner
civil right violation
obstruction of Justice

Fraudulent/ineffective assistance
of counsle

witness CJ    due process
violation
ineffective assistance
of cougle
didnt subpoena
fraudulent

18

*[handwritten annotations in top margin:]* due process violation
Entry of fraudulent assistance of counsel — subpoena
miscarriage of Justice
police misconduct 19

```
1    everything started happening, it was just me, Chris and
2    C.J.
3    Q      And you stated that Mr. Bradley was drinking; is
4    that correct?
5    A      Yes.
6    Q      Were you drinking with him?
7    A      No.
8    Q      And how long did -- how long was Mr. Bradley
9    drinking that you saw?
10   A      How long?
11   Q      Yeah.  How long?
12   A      It was just off and on 'cause when some of his
13   friends came to the park, they drunk some, too.  So,
14   really, he -- it was just like off and on, basically
15   sharing.
16   Q      Okay.  In the time you've known Mr. Bradley, have
17   you ever seen him drunk prior to this occasion?
18   A      Yes.
19          MS. STRAWN:  Objection.  Relevance.
20          THE COURT:  Overruled.
21          THE WITNESS:  Yes, I have.
22   Q      BY MR. REYES:  Okay.  Did he appear drunk to you
23   that day on the 12th of July?
24   A      Yeah, he was.  Yeah, he was.  I know when --
25   Q      Was he drunk or --
26   A      He was drunk.
27   Q      Okay.  Now, you stated that you started an argument;
28   is that correct?
```

fraudulent/incriminated client/with fraudulent assistance if the ATToRney done his dueDiligence at time of arrest he could see my blood test results at intake shows I wasn't drunk

incriminated fraudulent assistance cruel unusual punishment/Entrapment

share wit friends Christopher Bradley wasn't drunk

fraudulent assistance Entrapment pursury Bradley wasn't drunk witness Tampering Entrapment intentional/tort witness Tampering

pursury

Self-defense

*The aggressor* *Bradley self-defense* *fraudulent assistance of couseI* 20

*mis carriage of justice*
*Intentional tort*

1    A        I started the argument?

2    Q        There was an argument.

3    A        There was an argument between me and him, yes.

4    Q        Do you know who started the argument?       *over*

5    A        At first it wasn't an argument, but I guess it      *ex-gf*

6    became one because he had gotten mad about a situation      *christine daniels*

7    between me and him.  And, basically, it was the -- about      *(aggressor*

8    his ex-girlfriend.  He was mad about his ex-girlfriend.

9    And --
                                                                 *(& witness)*
10    Q        Let me stop you there.  Was it based on the fact      *Tampering*

11    that maybe that Mr. Bradley was speaking about how he used      *Entrapment*

12    to -- or things he used to do with his ex-girlfriend that      *cruel unusual punishment*

13    upset you?
                                                                 *< purjury >*
14    A        It didn't upset me because I didn't care.      *she attack*

15    Q        Okay.  But you did -- you did argue with him;      *is bradley self-defense*

16    that correct?                                                *push her off*

17    A        Um, when it got to the end, yes.  'Cause he was, you      *self defense*

18    know, in my face yelling you did tell me that you liked me.

19    And I told him I've never liked you.  I -- we were never

20    intimate or anything.      *due process violation she was*
                                *gonna spend a night*
21    Q        So that's what upset you then when he told you      *before argument*

22    that --
            *I was'nt (MAD) was talking to (CJ)*
23    A        That's what upset him.      *purjury due process*

24    Q        That's what upset him?      *violation*
                                        *self-defense*
25    A        What I told him.

26    Q        What upset you?

27    A        Nothing upsetting me.  Only thing upsetting me was      *purjury*

28    him getting in my face saying that I told him that I liked

                                        *due process*
                                        *violation*
                                    *self-defense* 20

1    him, and I told him I never did. *(perjury)* *Witness Tampering*

2    Q    You stated that he tackled you; is that correct?

3    A    Yes.                *due process violations*
                              *self-defense*

4    Q    That was at the park first?

5    A    Yes.                *witness tampering*

6    Q    Now, when he tackled you, did he stay on top of you, *purjury*

7    or did he get off of you right away?

8    A    He tried to, but I fought my way.  Then I had got *purjury*

9    back up again.  And then I said -- you know, basically,

10   there were words going back and forth, and he tried to *(purjury)*

11   tackle me again, and we were fighting.  And we got up *bradley doesn't hit*

12   again, started fighting again.  We fought like two, three *females*

13   times at the park.       *illegal sentence*
                              *Entrapment* *cruel unusual*

14   Q    Was this tackling playful or was -- *self-defense punishment*

15   A    No.  It was a tackling like he didn't want to hit me *Bradley*

16   because he know I'm a girl, you know.  So, basically, he *self-defense*

17   wants to, I guess, tackle me on the ground and, you know, *Bradley self-defense*

18   physically fight or something.  I don't know. *self-defense*

19   Q    But you stated -- you testified earlier that he was

20   bleeding; is that correct?        *illegal*

21   A    Yes.  *self-defense intentional tort sentence*

22   Q    And was that because you hit him?    *Entrapment*

23   A    Yes.  *self-defense    Entrapment*

24   Q    How many times did you hit him?

25   A    Um, I really don't know 'cause the whole time that I *purjury self defense*

26   was on the ground fighting, I'm trying to get him off me. *Entrapment*

27   And I really don't know how many times.  Like I said, we *purjury*

28   fought like two or three times, and he wouldn't let me *Entrapment*

*unlawful conviction  illegal sentence  withholding evidence  civil rights violations*
*No injurys or photos taken*

*[Handwritten annotations:]* due process violation; purjury it was nighttime; we was leaveing all the park

1    leave from the park at all.

2    Q        Okay.  But you eventually left the park; is that

3    correct?

4    A        Yeah.  We walked away from the park, but the whole

5    time as I'm walking away from the park I'm being tackled. *purjury*

6    Q        Okay.  So you left the park with Mr. Bradley? *due process violation*

7    A        I'm trying to get away from him and walking like, *self-defense*

8    okay, I'm goin' home.  Then as you know he's walking, oh, *Bradley*

9    "F" this, and that's, you know, I'm being tackled. *self-defense*

10   Q        Okay.  Now, where was C.J. at this time? *due process*

11   A        He was just walking, looking. *Violation civil rights Violation Entrapment*

12   Q        So he was walking when you left the park, and

13   Mr. Bradley left with you? *due process violation witness CJ*

14   A        He was behind.  Like -- he -- Chris kept coming up *purjury*

15   to me, you know, kept running up tackling me and trying to *self defense*

16   fight, whatever.  But his friend was, you know, just

17   walking and watching.  I asked him can he get Chris off me?

18   He said, well, I tried to.  So, basically, he just let it

19   be. *Bradley never hit her self-defense due process violation*

20   Q        Okay.  Now, let's now -- let's jump ahead to where *witness*

21   you ran into the first gentleman.  You said it was a senior *Tampering*

22   citizen; is that correct? *unlawful descrimination self defense*

23   A        Yes. *fem*

24   Q        Did you walk up to that person and ask him to use

25   his phone? *purjury witness tampering*

26   A        When we were -- yes.  When he was coming from the

27   house, I walked up to him, and I asked him can I use his

28   phone, but it seemed like he was -- *witness tampering*

*obstruction of Entrapment*

```
1    Q       Okay. Stop there. Um, did he hand you the phone?
2    A       No. The other guy handed me the phone that came up
3    from the house. perjury There wasn't a phone
4    Q       So there was another individual, not just this
5    senior citizen; is that correct?
6    A       Yes.        CJ
7    Q       And you stated at some point you ended up in the  violation
                                                    process
8    bushes; is that correct?      perjury due push self
9    A       When I was walking up to the senior citizen, he had defense
10   tackled me into him, and we all fell into the bushes. only
11   Q       Oh, who had tackled you? perjury self defense
                                              push her off
12   A       Chris.   I didnt tackle I didnt fall into
13   Q       So Chris tackled you?  the bushes due process
14   A       Yes.        Entrapment   violation
15   Q       You landed on top of the senior citizen and you --
16   A       Yes, and the --
17           THE COURT REPORTER: One at a time, please.
18           THE COURT: Re-ask the question, Mr. Reyes.
19   Q       BY MR. REYES: So Chris tackled you. You landed on
20   top of the senior citizen, and you both jumped -- and fell
21   in the bushes?
22   A       We all fell into the bushes, yes.
23   Q       And Chris also? perjury while she fell into the
                                      senior citizen
24   A       Yes.  into the bushes I was attack
                              by the other witness
25   Q       And now once you all fell in the bushes, did Chris
26   let go, or did he let you up or --  hit me in lip =self defense
27   A       Um, he tried to like, you know, fight a little bit perjury
                                                        I was
28   but as he seen -- I guess when he seen the, you know, the fighting
                                                    the other witness
                                            whyle They still
                                                    was
                                          23    getting
                                                    up
```

1    senior citizen was on the ground, he had let me up, and I

2    had got up. And I was gonna walk away, but, like I said,

3    the guy came --    *self-defense*    *witness tampering* ment

4    Q    Okay. Stop there. Stop there. So he let you up. *Entrap*

5    You got up. Did the senior citizen get up, also? *Obstruction*

6    A    Yes, he was -- yes.    *of Justice*

7    Q    Okay. Now, you stated there was another individual,

8    correct?

9    A    Yes. *obstruction of Justice*    *Entrapment predicate*

10   Q    Was he the same age as the first individual you saw?

11   A    He looked a little younger. *unlawful/racial discrimination*

12   Q    Okay. What nationality or race was he? White?

13   Black?    *misconduct unlawful    legal mal*

14   A    White male.    *racial discrimination    practice*

15   Q    A white male? How about the senior citizen?

16   A    White male, also.    *obstruction of Justice*

17   Q    Okay. And that second individual, the second white

18   male that came, did you ask him for a phone? *Entrapment*

19   A    Yes.    *perjury*

20   Q    And did he hand you the phone?    *Intentional tort*

21   A    He was trying to.

22   Q    He was trying to?

23   A    Yes.    *perjury*

24   Q    Okay. You stated at one point that Mr. Bradley

25   slapped the phone away from him?

26   A    Yes. Either he slapped or socked it, one of them, *perjury*

27   but it was out of his hand.

28   Q    Did you see it yourself?

1    A      Yes.

2    Q      So what was it?  Was it a slap or a sock?

3    A      It was a slap or a sock.  It was fast.  So I don't

4    know if he had a open hand or closed fist, but it was

5    slapped out of his hand.  *perjury*

6    Q      So he -- so what you saw was Mr. Bradley took a

7    swing at the other gentleman and knocked the phone out of

8    his hand?

9    A      Yes.  *perjury Entrapment*

10   Q      He didn't contact -- he didn't hit him in the head

11   or anything else?

12   A      He hit him in the face, but I don't know if he hit

13   the phone.  *perjury Entrapment*

14   Q      No, no, the first time when you saw him slap the  *witness Tampering*

15   phone out of his hand, did Mr. Bradley hit him in the head?

16   Face?  Or did he --

17   A      It was in the face.  *perjury*

18   Q      In the face?

19   A      Yes.

20   Q      Where was the phone?  *(perjury) due process violation*

21   A      In his hand.  *there wasn't a phone*

22   Q      And where was his hand in proportion to his face?

23   A      He was standing in front of him.  He swung.  And the

24   guy, I guess -- I don't know if he like tried to slap him  *perjury*

25   or hit him, I don't know.  But I know that when he tried to  *no phone*

26   give me the phone, except, you know, he just he attacked --

27   he attacked him.  He hit him in the face.  I don't know.  *self defense*

28   He just hit him in the face.  That's all I know.  That's

```
1    all I seen.  They both started fighting.  self-defense

2    Q      So did -- let me ask you this:  Do you remember if

3    he hit him in the face first, or if he hit the phone first?

4    Which one was it?

5    A      It was both.  Both all in together.  Like you're  purjury

6    standing here, and then he trying to use the phone.  As you

7    know, he hits the guy.  The guy hits.  The phone falls out.  self-defense

8    But he connected the face.  So I don't know if he --  purjury
                                                                 no
9    Q      At the same time that he connected with the phone?  phone

10   A      Yes, at the same time.  Everything just clashed at

11   the same time.  purjury due process violation  self-defense

12   Q      And then at some point they started fighting, both

13   individuals started fighting or --

14   A      Yes.  self-defense ChrisBradley

15   Q      So Mr. Bradley and that other gentleman were

16   fighting?
                       fraudulent assistance of counsle
17   A      Yes.  witness Tampering Entrapment

18   Q      So it wasn't that Mr. Bradley knocked him on the

19   ground and jumped on top of him?

20   A      No.  He actually tackled him to the ground.  self-defense
                                                     Stand your ground
21   Q      Who did?                                  Law

22   A      Chris.

23   Q      This is after they start fighting?        self
                                                     defense
24   A      Yes.  That's when the guy fell and hit his head.

25   Q      Okay.  Did you ever see the other gentleman knock

26   Mr. Bradley to the ground?

27   A      He didn't fall to the ground.  The guy was knocked

28   out on the ground.  He had blood and everything.  He was
```

1   basically knocked out on the ground laid out.

2   Q      Okay.  And you saw this yourself?

3   A      Yes.

4          MR. REYES:  I have nothing further, Your Honor.

5          THE COURT:  Anything further?

6          MS. STRAWN:   Nothing further.

7          THE COURT:  Nothing further?

8          MS. STRAWN:   Nothing further.

9          THE COURT:  Okay.  Thank you.  You may step down.

10         Your next witness?

11         MS. STRAWN:   People would like to call Von Powers.

12         THE CLERK:  Step right up here, Mr. Powers, please.

13  That's good right there, sir.  Can I have you raise your

14  right hand?

15         Do you solemnly swear the testimony you'll give in

16  this cause will be the truth, the whole truth, and nothing

17  but the truth so help you God?

18         THE WITNESS:  I do.

19                      TESTIMONY OF

20  VON H. POWERS, witness called by the People:

21         THE CLERK:  Thank you sir.  Have a seat in the

22  witness chair, and please state your name and spell it for

23  me.

24         THE WITNESS:  Name, Von Powers.

25         THE CLERK:  Can you spell it for me, please?

26         THE WITNESS:  How's that?

27         THE COURT REPORTER:  Spell it.

28         THE WITNESS:  V-O-N.  H.  P-O-W-E-R-S.

*[Handwritten annotations in right margin:]*
fraudulent assistance of counsel
Entrapment  false imprisonment
unlawful discrimination
intentional tort
perjury
miscarriage of justice

```
 1              THE CLERK:   Thank you.
 2              THE COURT:   Please proceed.
 3                           DIRECT EXAMINATION
 4      BY MS. STRAWN:
 5      Q       Mr. Powers, how old are you, sir?
 6      A       77.
 7      Q       Now, Mr. Powers, I want to draw your attention to
 8      July 12th, 2006, at a little after 10:00 o'clock in the
 9      evening.  Do you remember where you were on that night?
10      A       Yeah.  I was over at the friend's of mine house on
11      Edinger.
12      Q       And who -- on Edinger Avenue?
13      A       Yes.
14      Q       Who was that friend?
15      A       John.  I don't know what his last name is.
16      Q       Is he a neighbor or just a friend you know?
17      A       Yeah, yeah, a neighbor.
18      Q       Okay.  Do you know if Edinger Avenue is in the
19      County of Sacramento?
20      A       How's that?
21      Q       Is Edinger Avenue in the County of Sacramento?
22      A       Yes.
23      Q       Okay.  Now, as you were leaving John's house, about
24      what time was that?
25      A       Oh, I guess it must have been about 10:30, somewhere
26      around there.
27      Q       And were you -- did you walk to the street?
28      A       Yeah.  I walked out to the street around the
```

due process violation) the park close at sunset will was walking to my house

1    mailbox.

2    Q      What happened right as you were walking right out

3    towards the mailbox?

4    A      Well, I heard the girl hollerin' that -- hollerin'

5    that he's trying to kill me or something. *perjury I didn't hit*
     *females*

6    Q      Okay.  You saw a girl coming down the street? *I wasn't the*
     *aggressor*

7    A      Yeah, a girl comin' down the street, and she run *either*
     *perjury*

8    right into me --      *(walk)  perjury*

9    Q      Okay.

10   A      -- right up against me.  And then -- then he come

11   along and grabbed her and pushed her and pushed me into the

12   bushes.  *I wasn't getting (attack) self-defense push her off me*

13   Q      Okay.  So you see the girl coming, and she comes

14   right up to you?

15   A      Yeah.

16   Q      Okay.  And then did you see the man that was

17   following her?  Was he running after her or --

18   A      Yes.  *perjury we was walking argueing (not*
     *runing)*

19   Q      Okay.  Do you recognize that man in the courtroom

20   today?

21   A      How's that?

22   Q      That man that was chasing the girl into the bushes,

23   is that man in the courtroom today?

24   A      Yes.

25   Q      Could you point to him and describe what he's

26   wearing?

27   A      No, I can't.  *intentional tort / Entrapment*

28   Q      Could you describe what he's wearing, sir?

1   A       His weight?

2   Q       The man that you just identified, could you point to

3   him and describe what he's wearing?

4   A       Yeah, the orange vest.

5           MS. STRAWN:    Your Honor, could the record reflect

6   the witness has identified the Defendant?

7           THE COURT:  Yes.

8   Q       BY MS. STRAWN:    Now, right when Mr. Bradley, the

9   Defendant, got up to where the girl was, what did he do

10  then?

11  A       Well, he grabbed her and pushed her into me.   *self-defense*

12  Q       And then what happened?

13  A       Well, I went down in the bushes and scratched my

14  arm.

15  Q       Okay.  Did the girl fall into you?

16  A       Yeah.  She fell into me.

17  Q       What happened next?

18  A       Well, I -- John came out and was gonna help me up.

19  And as soon as he came out, I guess he was gonna use his

20  phone or somethin', and he got off of her and went after   *perjury*

21  him.   *wasnt no phone*   *self-defense I was attack*
                                          *instantly*
22  Q       He got off of the girl and went after John?   *fight started*

23  A       Yeah.

24  Q       Did you see John have his phone?   *due process, violation*
                                              *There wasnt a phone*
25  A       No.  I didn't see that he had his phone.  I was   *??*

26  trying to get up.  I was down on the ground.   *coaching witness*

27  Q       Okay.  Then what happened after the Defendant went   *Tampering*

28  after John?   *obstruction*
                  *of Justice*

30

1    A      Well, they got in a fight.

2    Q      Okay.  Did -- did John start the fight or did the

3    guy start the fight?

4    A      Well, the guy run after him, started on him.  *self defense*

5    Q      Okay.  And then what happened to John during the

6    fight?   *self -defense*

7    A      Well, he tackled him.  Then they quit fightin'.  And

8    then he tackled him and told -- throw -- throwed John down.

9    Q      Threw John down?

10   A      Yeah, and he busted his head open.  *self-defense*  *he busted*

11   Q      Okay.  And then what happened to John when his head   *my lip*  *started my*

12   got busted?   *the fight*

13   A      Well, he went out for a few minutes.   *first*

14   Q      Was he completely unconscious?

15   A      Yes.

16   Q      How many minutes would you say he was unconscious

17   for?

18   A      I don't know.  For about three or four minutes

19   anyway.

20   Q      When John came to, was that when the police came?

21   A      Yes.  Right after he came, he came to.

22          MS. STRAWN:  Okay.  I have nothing further.

23          THE COURT:  Mr. Reyes?

24          MR. REYES:  Yes, Your Honor.  Thank you, Your

25   Honor.

26                      CROSS-EXAMINATION

27   BY MR. REYES:

28   Q      So you saw a girl walking down the street hollering;

1    is that right?

2    A      More runnin'.  She wasn't walkin'.  She was runnin'. *perjury walking*

3    Q      Okay.  And then you say you saw this gentleman

4    tackle her? *push self-defense witness tampering*

5    A      Yeah.  He run up and grabbed her and shoved her

6    right into me. *self-defense*

7    Q      Okay.  And you both fell in the bushes?

8    A      Yeah.

9    Q      Did the gentleman also fall in the bushes with you?

10   A      Yeah.  He fell on top of her. *perjury I didn't fall in the bushes my lip was busted*

11   Q      Okay.  And once you were on the bushes, did he get *by the stranger at that moment*

12   up and let you up?

13   A      Yeah.  He got -- he got up and got after John.

14   That's when he went after John.

15   Q      So you saw him go after John?

16   A      Yeah, 'cause I was trying to get up. *(John Brown christopher) ((perjury didn't pick him up*

17   Q      Okay.  Did you hear him saying anything to John or

18   did John say anything to him?

19   A      I didn't hear him say nothin'. *perjury*

20   Q      You didn't hear either one say nothing?

21   A      He -- I heard her.  She was hollerin' call 911.

22   That's all I heard. *(perjury) she had no injurys only blood on her was mines (inconsistantcy))*

23   Q      So you heard her, but you didn't hear John or the *why call all*

24   other individual talk?

25   A      No. *self-defense stand your ground law*

26   Q      Okay.  Now, you stated that John and that guy

27   started fighting; is that correct?

28   A      Yeah. *self-defense*

1    Q    And then the guy tackled John?

2    A    Yeah.

3    Q    Okay.  Did you see the guy ever -- or John ever hit

4    the other guy?                                        *obstruction*

5    A    I didn't see nothin' about no hittin'.  I mean, I  *of justice*

6    was -- they started fightin', but I don't know which one

7    hit.  *self defense busted my lip is what started the fight*

8    Q    So you didn't see -- you don't know who hit who?

9    A    No.  Well, he started -- he started after him first.

10   That's all I know.  *perjury    self-defense Entrapment*

11   Q    Yeah, but was this during the time that you were

12   trying to get up out of the bushes?

13   A    Yeah.

14   Q    Were you facing in the direction of John while you

15   were trying to get out of the bushes?

16   A    How's that?

17   Q    When you were trying to get out of the bushes, were

18   you looking in the direction where John was, or were you

19   looking --

20   A    Yeah.  I was turned over on my side.        *fraudulent*

21        MR. REYES:  I have nothing further, Your Honor.  *ineffective*
                                                           *assitance*
22        THE COURT:  Anything further?  *due process      of counsle*
                                          violations /
23        MS. STRAWN:  No, Your Honor.  *Entrapment  intentional*
                                                      *tort*
24        THE COURT:  Okay.  Thank you, sir.  You may step

25   down.

26        THE WITNESS:  Yeah.

27        THE COURT:  Next witness?

28        MS. STRAWN:  People call John Brown.

*due process violation*
*civil rights violation*
*with holding evidence police misconduct*
*unlawful discrimination*

```
 1          THE COURT:  Final witness?

 2          MS. STRAWN:  John Brown, please.

 3          THE COURT:  Is this your last witness?

 4          MS. STRAWN:  Yes.

 5          THE COURT:  Okay.

 6          THE CLERK:  Please step right up here, sir.

 7          THE WITNESS:  Right here?

 8          THE CLERK:  Where you are right there is just great.

 9   Raise your right hand.

10          Do you solemnly swear the testimony you'll give in

11   this cause will be the truth, the whole truth, and nothing

12   but the truth so help you God?

13          THE WITNESS:  I certainly do.

14                          TESTIMONY OF

15   JOHN CHRISTOPHER BROWN, witness called by the People:

16          THE CLERK:  Thank you, sir.  Please be seated in the

17   witness chair.  And please state your name and spell it for

18   me.

19          THE WITNESS:  My name is John Christopher Brown.

20   Common spelling.

21          THE CLERK:  Thank you.

22          THE COURT:  Please proceed.

23                       DIRECT EXAMINATION

24   BY MS. STRAWN:

25   Q     Mr. Brown, where do you live?

26   A     At 2621 Edinger Avenue.  E-D-I-N-G-E-R.  That's in

27   Sacramento County, California, 95822.

28   Q     Were you at home on July 12th, 2006, at a little
```

1    after 10:00 p.m.?

2    A      Yes, I was.

3    Q      Who were you there with?

4    A      I just had a conversation with my old friend, Von.

5    Q      Okay.

6    A      You know, he's been in the neighborhood for

7    18 years, and he had --

8    Q      Was Von at your house?

9    A      Yeah.  He came inside for an hour or two.

10   Q      Okay.  And then what happened right after John or

11   Von left?

12   A      Right after he left I heard a commotion out in the

13   front.  So I went out to look.  And I see him down on the

14   ground.  So I went out there to pick him up to get him up

15   on his feet.

16   Q      And then who else was around?

17   A      This guy "here," he was shoving the girl.  I don't

18   know her name.  Christine.

19   Q      Okay.  *self-defense*  *She had attack me I was trying*
                                   *to get her to stop*

20   A      He was shoving her and pushing her into my hedge

21   bushes, and they have thorns on them.  *purgury/ not even Tackling only*
                                                                      *pushing off*

22   Q      Could you point to the person that you're referring  *due*

23   to that was pushing Christine?  *self-defense*              *process*
                                            *Entrapment*         *Violation*

24   A      That would be this gentleman "here."

25   Q      Could you describe what he's wearing?

26   A      Um, not really.

27   Q      What color is he wearing?

28   A      I think he was wearing blue jeans.

1    Q        No, no.  In the courtroom today, what is the person

2    that was pushing the girl wearing?

3            THE COURT:  What's he wearing today, sir?

4            THE WITNESS:  Oh, the orange.

5            MS. STRAWN:  Okay.  Your Honor, could the record

6    reflect that the witness has identified the Defendant?

7            THE COURT:  Yes.

8            THE WITNESS:  His name is Christopher Lawrence

9    Bradley.  I don't know him, but he just happened to be in

10   front of my house pushing this girl around.  He was beating

11   her up.  *perjury I don't hit females self-defense*

12   Q        BY MS. STRAWN:  Okay.  Let me --  *witness tampering*

13           MR. REYES:  I'll object to the --  *obstruction of justice*

14           MS. STRAWN:  Let me ask the questions.  *Entrapment*

15           THE COURT:  Sustained.  Go ahead.  *malious prosecution*

16   Q        BY MS. STRAWN:  I understand that you're

17   frustrated, and you're kind of angry about this situation,  *Entrapment*

18   but you got to kind of let me ask the questions, okay,  *Witness*

19   Mr. Brown?  *Tampering*

20   A        Certainly.

21   Q        Okay.  So when you walked outside and tried to help

22   Mr. Powers out of the bushes, what happened next?

23   A        I saw him shoving Christine, and he kept shoving her

24   and hitting her into my thorn bushes.  *perjury I push her*

25   Q        And then what happened next?  *1 time she fell into*

26   A        Then, um, she was begging me to call 911.  *the other guy*  *due process*

27   Q        So what did you do?  *violation*

28   A        I picked up my cell phone out of my pocket, and I  *perjur*

                                                    *he attack me*
                                                    *~~for~~ for no reason*

1    walked back about four steps onto my property so I could *all*

2    complete the call. *<purjury> he didn't try call he*

3    Q    Okay.    *Starting swinging on me hitting me*

4    A    I tried to hit the send button.  He came running up *busted my lip*

5    on my property and "blam," just right -- he smacked my *phone are a*

6    phone right in my eye.  *purjury There wasn't a reason to*

*call cops she had no injurys only*

7    Q    Okay.  Where did you have your phone when he smacked *I did*

8    you?    *Bradley*

*Self-defense*

9    A    I was just putting it up to my face, hitting the

10   sell -- or hitting the send button.  And he smashed the

11   phone into my eye.  It's still red.  It was completely red *purjury*

12   before, and I took a couple stitches "here."  *with holding medical evidence showing*

13   Q    So what -- and did the phone fly out of your hand? *This man*

*was drunk*

14   A    It went flying about 20 feet he hit it so hard.  *purjury*

15   Q    What happened?  What did you do next?

16   A    Christine picked up the phone, and I guess she

17   finished the call.  *purjury*

18   Q    Okay.  What did you do next specifically?

19   A    I had to defend myself.    *purjury*

20   Q    Okay.  So what did you do?

21   A    I walked up, and we started boxing right in the

22   middle of the street.  He was gonna keep on hitting me.  I *self defense*

23   had no choice.  *purjury I didn't hit him I threw him*

24   Q    Okay.    *on the ground and he hit his head*

*self-defense stand your ground law*

25        MR. REYES:  Objection, Your Honor.  Calling for

26   speculation.

27        THE COURT:  The latter part is speculative. *false imprison*

*unlawful/wrongful conviction*

28   Sustained.    *ment*

*self-defense stand your*

*ground law*

```
1    Q      BY MS. STRAWN:    Then what happened?
2    A      Then he ended up -- he ended up tackling me, and he
3    slammed my head down on the ground.  And I took 17          self-defense
4    stitches.  I've got over $23,000 in medical bills. withholding
                                                          medical
5    Q      Okay.  So after he slammed you down on the ground, evidance
6    do you remember what happened next?                         showing
                                                                 he was
7    A      No.  They said I was unconscious for two or three    drunk
8    minutes.                                    < due process
9          MR. REYES:    Objection.  Hearsay.           violations
10          THE COURT:    Sustained.                 obstruction
                                                       of Justice
11          THE WITNESS:    And then the other witnesses --   self-defense
12          THE COURT:    Just one second, sir.  Let her ask you
13    another question.
14          MS. STRAWN:    I'll have to ask you another question.
15    Q      When you came to, what happened?
16    A      Next thing I know I see three cops.  Three, you
17    know, police automobiles --
18    Q      Okay.
19    A      -- an ambulance, and I think one or two fire
20    engines.
21    Q      Okay.  Did they take you to the hospital?
22    A      Oh, yeah.  They put a neck brace on me and --  due process
                                                              violation,
23    Q      Now, what specifically did you have done to repair
24    your injury?  with holding    evidance/Entrapment
                                                        self-defense
25    A      They put they said 17 stitches in the back of my obstruction
26    head, and they did one or two of them over "here."  They of Justice
27    had to do a CAT scan, and they had to do, um, a full body
28    scan because they said he was kicking me when I was    purjury
                                                              self-defense
```

38

1    unconscious.

2              MR. REYES:   Objection.  Hearsay.

3              THE COURT:   Sustained, as to the latter part.

4              MS. STRAWN:  I have nothing further.  *False Imprisonment*

                                                    *false arrest/Entrapment*

5              THE COURT:   Okay.  Mr. Reyes?

6              THE WITNESS:  Von will attest to that though.  *purjury*

7              THE COURT:   It's okay, sir.  Let Mr. Reyes ask you a

8    few questions, okay?

9              THE WITNESS:  Mm-hm.

10             THE COURT:   Please proceed.

11                         CROSS-EXAMINATION

12   BY MR. REYES:

13   Q      Now, when you came out on that evening when you saw

14   Von on the floor, did you say anything to Mr. Bradley?

15   A      I never said a word to him the whole time.  *purJury*

16   Q      And when -- were you able to pick Mr. Bradley -- or  *purjury*

17   Von up?                                              *purjury> on the*

                                                         *ground  he was*

18   A      I picked Von up and got him up on his feet.   *we*

                                                         *where*

19   Q      Okay.  And then at any point after picking up Von,  *fighting*

20   did you go up to Mr. Bradley and push him down to the  *he busted*

                                                         *my lip starting*

21   ground?                                              *the fight*

22   A      No.  She was begging me to call 911.  *purJury she was on*

23   Q      Okay.  Hold on.                       *the ground still*

24   A      She said he's going to kill me.  *purjury> only blood on her*

                                             *shirt was MINEZ (witness)*

25   Q      So after you picked up Von, is that when you went on  *Tampering*

26   your property to dial 911?  *purjury> he didnt pick him up*

                               *or  call 911*

27   A      Yeah.  I got my phone out of my pocket, and I took

28   some steps back to complete the call.  And he came charging  *purjury*

1    up on my property.    *witness Tampering obstruction of Justice*

2    Q        Stop right there.  Stop right there.  Then while you

3    were placing the phone to the ear, that's when you say he

4    came and hit you?

5    A        Yeah.  I was just about to hit the send button, and

6    he smashed the phone right into my eye.  *purjury didn't have phone*

7    Q        Okay.  And after he smashed the phone into your eye,

8    you stated you started fighting him; is that correct?

9    A        I had to defend myself.  *Self-defense*

10   Q        Okay.  But then did you hit him?  *purjury I throw him on The ground in self-defense*

11   A        I did.  I'll admit it.  But he was punching me, too.

12   Q        I understand.  How many times did you hit him?  *self-defense*

13   A        He blocked most of my punches.  I think I may have

14   landed one or two.  *self-defense stand your ground*

15   Q        Okay.  *false Imprisonement Law Entrapment*

16   A        Maybe one punch.

17   Q        How much punches did you throw?  *self-defense false arrest/I*

18   A        I don't know.  We were -- I don't remember.  We were  *due process violation*

19   boxing.  Just we were both swinging, both of us.

20   Q        So he was swinging at you, also, then?  *Entrapment self-defense*

21   A        Yeah.  But he threw the first punch when he slammed

22   my cell phone in my eye.  *purjury was't a phone or reason to call ontell he was*

23   Q        Okay.  After he slammed the cell phone in your eye,  *knock out self-defense witness (Tampering)*

24   did he hit you again?

25   A        Oh, yeah.  He got me in the jaw.  It still clicks

26   every time I take a bite when I try and eat food.  *obstruction*

27   Q        And then you said at some point he tackled you to  *purjury self-defense*

28   the ground?

40

```
1   A       Yeah.  Then he just grabbed me.  He did a tackle
2   move and slammed my head straight on the ground.          self-defense
3           MR. REYES:   I have nothing further, Your Honor.   fraudulent
                                                               assistance
4           THE WITNESS:  I still have the scar.  You can see  of counsel
5   the scar on the back of my head.    self-defense           Entrapment
                                              Entrapment
6           THE COURT:  I can see it.  unlawful discrimination
7           Okay.  Anything further?  obsTruction of Justice
                                            due process violation
8           MS. STRAWN:   Nothing further.  Civil rights violations
9           THE COURT:   Thank you, sir.
10          THE WITNESS:  That's it?
11          THE COURT:  You're all done.  Thank you, sir.  You
12  may step down.
13          MS. STRAWN:   Your Honor, the People have no more   ⊤(CJ)
14  witnesses.  We rest.  due process violation  witness
                     Intentional tort
15          THE COURT:  Mr. Reyes, do you have anything on
16  behalf of your client today by way of testimony or
17  witnesses or other evidence?     Entrapment  of counsel
18          MR. REYES:   No, Your Honor.  fraudulent assistance
19          THE COURT:   Okay.
20          THE WITNESS:  You have my cell phone number in case
21  you have to contact me?  preduce discriminat,on/unlawful
                                                  /Entrapment
22          MS. STRAWN:   Just wait out in the hall.
23          THE COURT:  Counsel, would either party like to be
24  heard?    malious prosecution false improsment
                              unlawful
25          MS. STRAWN:   No, Your Honor. /wroungful conviction
26          MR. REYES:   Just briefly, Your Honor.
27          Mr. Bradley -- I'll submit, Your Honor.
28          THE COURT:   Okay.  It does appear to me that the
```

*(handwritten: Civil rights violations / illegal sentence / Corruption systematic / Self-defense / unlawful discrimination)*

1   offenses in the complaint have been committed, and that

2   there is sufficient cause to believe that the Defendant,

3   Christopher Lawrence Bradley, is guilty thereof.  I order

4   that the Defendant be held to answer to the same.

5        In my capacity as a judge of the Superior Court, I

6   deem the Complaint to be an Information, and I do order it

7   filed in the Superior Court. *(malious prosecution / mis carriage of justice / Entrapment)*

8        Mr. Bradley, do you have the funds to hire your own

9   attorney, sir?

10       THE DEFENDANT:  Huh? *(Impaired DDI ADA disability)*

11       THE COURT:  Do you have the funds to hire your own

12   attorney? *(Entrapment / unlawful discrimination / creul unsual punisment)*

13       THE DEFENDANT:  Nuh-uh. *(false Imprisonment)*

14       THE COURT:  Is that no?

15       THE DEFENDANT:  No.

16       THE COURT:  Mr. Reyes, are you prepared to accept

17   reappointment on behalf of the Public Defender's Office in

18   this case? *(fraudulent assistance)*

19       MR. REYES:  Conflict Criminal Defenders.

20       THE COURT:  I'm sorry.  Conflict Criminal Defenders?

21       MR. REYES:  Yes, Your Honor.

22       THE COURT:  All right.  Do you waive formal

23   arraignment?

24       MR. REYES:  So waived. *(fraudulent assistance)*

25       THE COURT:  Stipulate your client's been advised of

26   his constitutional rights? *(Civil rights violations)*

27       MR. REYES:  Yes. *(due process / police mis conduct)*

28       THE COURT:  Enter not guilty pleas to all charges?

42

```
1        MR. REYES:   Yes.

2        THE COURT:   As well as denials?

3        MR. REYES:   Yes.                    Entrapment

4        THE COURT:   Counsel, let's go off the record and
                                              false Imprisonment
5   select some dates.
                                      unlawful conviction
6        (Off-the-record discussion.)        self-defense

7        THE COURT:   This matter then is going to be set for

8   a TRC on October 3rd, 2006, at 1:35 in Department 60, and

9   for jury trial on October 11th at 2006 at 8:45 in

10  Department 4.

11       MR. REYES:   Thank you.

12       THE COURT:   Thank you.

13       THE DEFENDANT:   Excuse me, Your Honor.  Can I be

14  O.R. please --   false Imprisonment   Entrapment

15       (Discussion with attorney.)

16       THE COURT:   Do you have a motion, Mr. Reyes?   I'll

17  hear from you.

18       MR. REYES:   Your Honor, I would like the Court to

19  consider the possibility that my client be released on his

20  own recognizance.  He has an appointment with his doctor on

21  the 28th.  He has a pending disability case.  He would like

22  to make that appointment.  His father is here in court, and

23  he's assured me that he will make his court appearances.

24       THE COURT:   Do the People want to be heard?

25       MS. STRAWN:   Your Honor, given the testimony today,

26  we feel that O.R. is highly inappropriate.   cruel unsual punsiment

27       THE COURT:   Yes.  I am concerned about the safety of

28  the community with respect to what I heard by way of this  intentional
                                                                  tort
```

43

*[handwritten annotations in top margin: "illegal sentence", "miscarriage of Justice", "civil right", "violation (unlawful)", "raical discrimination", "intentional tort", "false Imprison", "Entrapment"]*

```
 1    preliminary hearing this afternoon.  Bail is currently set

 2    at $65,000.  I think that's on the lower side of

 3    appropriate, but appropriate nevertheless.
```

*[handwritten: "false Imprison" / "Entrapment"]*

```
 4            MR. REYES:  Now, on that notion, Your Honor, I

 5    understand that Mr. Bradley has a trailing misdemeanor case

 6    in which he's currently released on his own recognizance.

 7    I -- can I ask the Court to revoke that, so at least he can

 8    start earning time credits?

 9            THE COURT:  I won't revoke and O.R., but I'll

10    certainly set bail on that case at the appropriate amount.
```

*[handwritten: "Entrapment"]*

```
11            THE CLERK:  It was set at 5,000 before he was

12    released on O.R.

13            THE COURT:  I'll reinstate bail at $5,000 on that

14    case.

15            MR. REYES:  Thank you, Your Honor.

16

17

18

19

20

21

22

23

24

25

26

27

28
```

44



**SUPERIOR COURT OF CALIFORNIA**
**County of Sacramento**
**720 Ninth Street ~ Room 101**
**Sacramento, CA 95814-1380**
**(916) 874-5403—Website www.saccourt.ca.gov**

*Random documents to case Summary*

May 9, 2017

MR. CHRISTOPHER L. BRADLEY
178 PYRMID CT
MERCED, CA 95341

RE:   THE PEOPLE OF THE STATE OF CALIFORNIA VS. CHRISTOPHER
       LAWRENCE BRADLEY
NO.   06F05998

Dear MR. CHRISTOPHER L. BRADLEY:

This is to acknowledge receipt of your Notice of Appeal in the above entitled action. The Notice of Appeal was received after the expiration of the 60-day period prescribed for filing such notice under rule 8.308(a) of the California Rules of Court.

Our records disclose that the judgment or the order from which you appealed was pronounced on JUNE 4, 2008.  Your Notice of Appeal was received in this office on APRIL 3, 2017.  The Notice of Appeal has been marked "RECEIVED BUT NOT FILED" as the period for filing has lapsed.

If you need further assistance, I suggest you contact an attorney or the Central California Appellate Program at 2150 River Plaza Drive, Suite 300, Sacramento, CA 95833.  Their number is (916) 441-3792.

Very truly yours,

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

BY: _____
       Deputy Clerk

cc:  Central California Appellate Program

*illegal sentence 1/14/2009*

STATE OF CALIFORNIA—DEPARTMENT OF CORRE~TIONS AND REHABILITATION                                    ARNOLD SCHWARZENEGGER, GOVERNOR



**DIVISION OF ADULT INSTITUTIONS**
**LEGAL PROCESSING UNIT**
1515 S Street, Sacramento, CA  95811-7243
P.O. Box 942883
Sacramento, CA  94283-0001
(916) 323-5865


January 14, 2009


Honorable S. White
Judge of the Superior Court
County of Sacramento
720 Ninth Street
Sacramento, CA  95814

                                        <u>**PLEASE EXPEDITE**</u>


**Re:  Bradley, Christopher Lawrence**
CDC No.:  G21809
Case No:  06F05998
Date of Sentence:  June 4, 2008

Dear Judge White:

A review of the documents delivered with the above-named inmate indicates the
Abstract of Judgment and/or Minute Order may be in error, or incomplete, for the
following reasons:

The Abstract of Judgment and the Minute Order reflect Counts 2 and 3, PC 242 Battery
with the middle term of 3 years imposed.  According to the Felony Complaint Counts 2
and 3 were charged as misdemeanor offenses that do not carry state prison terms.
Sentences on misdemeanor offenses can be reflected on the Abstract in Section 11,
other orders.

**May we please request an expeditious response from the Court as defendant has
an imminent release date.**

Please review your file to determine if a correction is required.  When notified by the
Department of Corrections that an illegal sentence exists, the trial court is entitled to
reconsider all sentencing choices, *People v Hill, 185 Cal. App. 3d 831*.  We would
appreciate your providing a **certified copy of any Minute Order or modified Abstract
of Judgment** to this Department.  May we also request the attached copy of this letter
be returned with your response.  If this case is under appellate review, please forward a
copy of this letter to the appellate attorney.

Sincerely,


L. DONALDSON
Correctional Case Records Manager


BY:  MELISSA LAVORICO
       Correctional Case Records Analyst


cc:   District Attorney
       Public Defender
       Inmate
       C-File

1/30/2009

harte

# SACRAMENTO SUPERIOR COURT

## MINUTE ORDER    Illegal sentence
June 4/2008
January 2/2007

| DEFENDANT: | SECTION(S) VIOLATED | | | DOCKET NO. |
|---|---|---|---|---|
| **BRADLEY, CHRISTOPHER LAWRENCE** | 1. 243(D)PC | 2. | 3. | **06F05998** |
| XREF : 3717878 | | | | BAIL SET |
| | 4. | 5. | 6. | |

| (Last) (First) (Middle) | | | | | | |
|---|---|---|---|---|---|---|
| OFFENSE DATE 7/12/06 | DATE FILED 08/17/06 | RELEASE STATUS | ☐ BAIL ☐ O.R. | BAIL AMOUNT $ _____ ☐ CASH | AGENCY ☐ CHP 100% ☐ CHP 50% | ☐ SPD ☐ SSD |
| | | | ☐ 853.6 | ☐ BOND # | | |

| PROSECUTOR | DEFENSE ATTORNEY | JURY TRIAL DATE |
|---|---|---|
| | | |

| DATE | JUDGE | CSR# | DEPT. | PROCEEDINGS |
|---|---|---|---|---|
| 01/30/09 | HERSHER | N/A | 63 | (EXPARTE) SENT OF 6/04/08 AS TO CTS 2 & 3   JIMS 20 |
| | | | | ORDERED VACATED AND CORRECTED TO |
| | | | | FURTH PROB DENIED, PROB TERMINATED; SENT |
| | | | | AS TO CT 1 REMAINS AS PREVIOUSLY ORDERED |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

CR-234 (Rev 4/93)        **DO NOT FILE ANY DOCUMENTS ON TOP OF THIS FORM**

*denial public records is violation s Bradley*
*of due process rights*

# SACRABENTO COUNTY



# SHERIFF'S DEPARTMENT

## SCOTT R. JONES
### *Sheriff*

February 9, 2017

Christopher Bradley
178 Pyramid Ct
Merced CA 95341

RE:   NON-COMPLIANCE WITH SUBPOENA
      People v Christopher Bradley

Dear Mr. Bradley:

You have issued a Subpoena to this agency for booking photos, victim photos, police discovery, and full medical records with your representation of yourself.

Unfortunately, both of the cases you listed 15M05205 and 06F05998 are not active cases; therefore your subpoena request is rejected.

Very truly yours,

SCOTT R. JONES, SHERIFF

*Karen L. Fryers*

Karen L. Fryers
Senior Sheriff's Records Specialist
Field Support Division
Sacramento County Sheriff's Department

*Not (TRUE)* *revenue recovery (order) still is ineffect*

CR-125/JV-525

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number and address):* | FOR COURT USE ONLY |
|---|---|
| Christopher Bradley #3717878 <br> 178 pyrmid ct <br> Merced CA 95341 | 2017 FEB 7 PM 12 24 <br> T. HEHLE #035 |
| TELEPHONE NO.:               FAX NO. *(Optional):* | |
| E-MAIL ADDRESS *(Optional):* | |
| ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 901 g street
MAILING ADDRESS: Sacramento, CA 95814
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

CASE NAME: Christopher Bradley    3717878

**ORDER TO ATTEND COURT OR PROVIDE DOCUMENTS:**
Subpoena/Subpoena Duces Tecum

CASE NUMBER: 15M05205
06F05998

**You must attend court or provide to the court the documents listed below. Follow the orders checked in item 2 below.  If you do not, the judge can fine you, send you to jail, or issue a warrant for your arrest.**

1.  To: *(name or business)*

2.  You must follow the court order(s) checked below:

    a.  ☐  Attend the hearing.

    b.  ☐  Attend the hearing *and bring all items checked in  c.  below.*

    c.  ☑  Provide a copy of these items to the court (Do not use this form to obtain Juvenile Court records):
        (1) records    booking    photos    victum    photos    3717878
        (2) police    discovery / medical    records    06F05998
        (3) _____

        ☐  *If this box is checked, provide all items listed on the attached sheet labeled "Provide These Items."*

    d.  ☐  If someone else is responsible for maintaining the items checked in c. above, that person (the Custodian of Records) must also attend the hearing.

    e.  ☐  If this box is checked and you deliver all items listed above to the court **within 5 days of service of this order,** you do not have to attend court if you follow the instructions in item 5.

3.  | Court Hearing Date: | The court hearing will be at *(name and address of court):* |
    |---|---|
    | Date: _____  Time: _____ | _____ |
    | Dept.: _____  Rm.: _____ | _____ |

    Call the person listed in item 4 below to make sure the hearing date has not changed. If you cannot go to court on this date, you must get permission from the person in item 4.  You may be entitled to witness fees, mileage, or both, in the discretion of the court.  Ask the person in item 4 after your appearance.

4.  The person who has required you to attend court or provide documents is:
    Name: Christopher Bradley    Phone No.: (916) 862-8885
    Address: 178 prymid ct    95341
    Number, Street, Apt. No.
    Merced    CA    95341
    City    State    Zip

    Date: 2/1/17    Signature ▶ S. CAMEL-JACOBS
    Name and Title

Form Adopted for Mandatory Use
Judicial Council of California
CR-125/JV-525 [Rev. July 1, 2007]

**ORDER TO ATTEND COURT OR PROVIDE DOCUMENTS:**
Subpoena/Subpoena Duces Tecum
(Criminal and Juvenile)

Page 1 of 2

CR-125/JV-525

| CASE NAME: | CASE NUMBER: |
|---|---|
| 06F05998 Christopher Bradley | 06 F05 998 |

5 a. Put all items checked in item 2c and your completed *Declaration of Custodian of Records* form in an envelope. (You can ask the person in item 4 where to get this form.) Attach a copy of page 1 of this order to the envelope.

   b. Put the envelope inside another envelope. Then, attach a copy of page 1 of this form to the outer envelope or write this information on the outer envelope:

   (1) Case name
   (2) Case number
   (3) Your name
   (4) Hearing date, time, and department

   c. Seal and mail the envelope to the Court Clerk at the address listed in ☐ item 3 or ☐ The court address in the caption on page 1 . You must mail these documents to the court within five days of service of this order.

   d. If you are the Custodian of Records, you must also mail the person in item 4 a copy of your completed *Declaration of Custodian of Records*. Do *not* include a copy of the documents.

—— *The server fills out the section below.* ——

## Proof of Service of CR-125/JV-525

1. I personally served a copy of this subpoena on:
   Date: _____ Time: _____ ☐ a.m. ☐ p.m.
   Name of the person served: _____
   At this address: _____
   After I served this person, I mailed or delivered a copy of this Proof of Service to the person in item 4 on *(date)*: _____
   Mailed from *(city)*: _____

2. I received this order for service on *(date)*: _____ and was not able to serve *(name of person)*
   _____ after *(number of attempts)* _____ attempts because:

   a. ☐  The person is not known at this address.
   b. ☐  The person moved and the forwarding address is not known.
   c. ☐  There is no such address.
   d. ☐  The address is in a different county.
   e. ☐  I was not able to serve by the hearing date.
   f. ☐  Other *(explain)*: _____

3. Server's name: _____ Phone no. _____

4. The server *(check one)*
   a. ☐  is a registered process server.       d. ☐  works for a registered process server.
   b. ☐  is not a registered process server.    e. ☐  is exempt from registration under Business and Professional Code
   c. ☐  is a sheriff, marshal, or constable.          section 22350(b).

5. Server's address: _____
   If server is a registered process server:
   County of registration: _____    Registration no.: _____

I declare under penalty of perjury under the laws of the State of California that I am at least 18 years old and not involved in this case and the information above is true and correct.

Date: _____

▶ _____              ▶ _____
*TYPE OR PRINT NAME OF SERVER*                     *SIGNATURE OF SERVER*

**ORDER TO ATTEND COURT OR PROVIDE DOCUMENTS:**
**Subpoena/Subpoena Duces Tecum**
**(Criminal and Juvenile)**

**COUNTY OF SACRAMENTO**
Department of Revenue Recovery
P. O. Box 1197
Sacramento, CA 95812-1197
(916) 875-7500

## Account Summary

| | |
|---|---|
| **Account ID** | 22504302 |
| **Balance as of 05/19/2017** | $57,736.39 |
| **Past Due:** | $55,007.39 |
| **Total Payment Due:** | $55,007.39 |
| **Payment Due Date:** | DUE NOW |

We Accept Cash, Personal Checks, Money Orders, Money Gram, Electronic Checks, Debit Cards and All Major Credit Cards

To Pay by Credit or Debit Card Call **1-800-272-9829**. Use Payment Option 3 with **Jurisdiction Code 1509.** For Online and Other Payment Options, Visit **www.officialpayments.com**

#BWNHSHK
#A000 0115 8GK8 4#
BRADLEY CHRISTOPHER LAWRENCE
178 PYRAMID CT
MERCED, CA 95341-8226

**Statement Date: 05/19/2017**

## Message Area

- Sacramento County will be converting to a new payment processing company (Payment Express) for credit/debit card and e-check payment processing. This change will become effective May 2017. Until this time please continue to use Official Payments and further information will be forthcoming.

- ATTENTION: YOUR ACCOUNT IS PAST DUE. Immediately pay the delinquent amount or contact our office. All legal means are used to collect until paid.

- $55007.39 of your balance has also been referred to the Court Ordered Debt program and is included in your past due amount.

- There are aid-related charges that you do not have to pay at this time. They are not included in the Total Payment Due above.

---

*Please detach & return w/payment*

| Account ID | Total Balance | Total Payment Due | Payment Due Date |
|---|---|---|---|
| 22504302 | $57,736.39 | $55,007.39 | DUE NOW |

| Statement Date | TO ENSURE PROPER CREDIT, RETURN THIS PORTION WITH YOUR PAYMENT | Check No.: |
|---|---|---|
| 05/19/2017 | | Payment Amount: |

Make all checks payable to COUNTY OF SACRAMENTO, DRR. Write account number on Check/Money Order. **Mail at least 5 days before the due date.**

**BRADLEY CHRISTOPHER LAWRENCE**
**178 PYRAMID CT**
**MERCED, CA 95341-8226**

County of Sacramento
Department of Revenue Recovery
P.O. Box 1086
Sacramento, CA. 95812-1086

0225043020550073 92

BRADLEY CHRISTOPHER LAWRENCE                         Account ID:22504302

**Balance as of 05/19/2017:**          **$57,736.39**
**Past Due:**                          **$55,007.39**
**Total Payment Due:**                 **$55,007.39**
**Payment Due Date:**                  **DUE NOW**

---

### Recent Charges

| Charge Id | Docket# | Charge Type Name | Begin Date | Create Date | Charge Amount | Current Balance |
|-----------|---------|------------------|------------|-------------|---------------|-----------------|
|           |         |                  |            |             |               |                 |

---

### Recent Financial Activity

| Transaction Id | Transaction Reason | Transaction Date | Transaction Amount |
|----------------|--------------------|------------------|--------------------|
|                |                    |                  |                    |

**If you have questions or need assistance, call DRR at (916) 875-7500**

---

*Fold Line*

---

Account ID: 22504302

---

### Address Changes

Please make any corrections to your address or phone number below.
Name:
Address:



Phone:
Email:

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**NOTICE OF AVAILABILITY OF MAGISTRATE JUDGE**
**TO EXERCISE JURISDICTION**

In accordance with the provisions of Title 28, U.S.C. § 636(c), you are hereby notified that a United States magistrate judge of this district is available to exercise the court's jurisdiction and to conduct any or all proceedings in this case including a jury or nonjury trial, and entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge.

An appeal from a judgment entered by a magistrate judge may be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Copies of the Form for the "Consent to Exercise of Jurisdiction by a United States Magistrate Judge" are available from the clerk of court.

The plaintiff or removing party shall serve a copy of this notice upon all other parties to this action pursuant to Federal Rules of Civil Procedure 4 and 5.

FOR THE COURT,

RICHARD W. WIEKING, CLERK

